No. 49,459

STEPHEN L. CLARK d/b/a CLARK MANAGEMENT COMPANY, *Plaintiff-Appellant,* v. JOHN W. WALKER and GEORGE SUDERMANN, *Defendants-Appellees.*

(590 P.2d 1043)

Opinion filed February 24, 1979. 

*Richard V. Foote,* of Matlack, Foote, Scott, Joseph, and Wilkinson, P.A., of Wichita, argued the cause, and *Ben Rishel,* of the same firm, was with him on the briefs for the appellant.

*David Gray,* of Legal Aid Society of Wichita, Inc., argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a landlord against former tenants of residential property to recover rent due and compensation for damage to the rental property. The primary issue for determination is the interpretation and constitutionality of certain provisions of the Residential Landlord and Tenant Act (K.S.A. 58-2540 *et seq.*). The facts in the case are undisputed and are as follows: On June 17, 1976, the defendants, John M. Walker and George Sudermann, entered into an agreement with Stephen L. Clark d/b/a Clark Management Company, to lease an apartment at the Sugar Creek apartments in Wichita. The lease agreement provided for a term extending from June 18, 1976, through December 31, 1976. Rent in the amount of $210 per month was to be paid in advance on the first day of each month. The lease required a late-payment fee of $10 per month if the rent was not paid by the fourth day of the month. In addition, the lease required the tenants to deposit with the landlord the sum of $200 as a security deposit "to guarantee fulfillment of all obligations of the tenant in connection with the rental and use of said premises." The defendants took possession of the apartment and

continued to reside there without incident until the month of December 1976. On November 3, 1976, Sudermann notified the plaintiff that the defendants would vacate the apartment at the end of December. After giving notice of their intent to leave, the defendants became concerned that the landlord might not return their security deposit to them. Consequently, when the December rent became due, the defendants tendered a check in the amount of $10 to the apartment manager, Evelyn Bell, for the December rent. The check, which represented the difference between the $210 rent due and the $200 security deposit held by the plaintiff, was placed in an envelope and dropped into the mail slot of the apartment manager's door. Mrs. Bell returned the check to defendants the next day with a note explaining that she could not accept a partial payment of the rent.

On December 6, 1976, Mrs. Bell placed an eviction notice in the defendants' mailbox. After obtaining no response, Mrs. Bell called Walker about payment of the rent. Walker explained that they had tried to pay and that she had refused to accept payment. At that time, Mrs. Bell informed Walker that the lease contained a provision which prohibited the application of the security deposit to the payment of rent. The lease provision was as follows:

"The tenant shall not apply or deduct any portion of the security deposit from the last month's rent or use or apply such tenant's security deposit at any time in lieu of payment of rent."

Walker expressed concern that the defendants would not get their security deposit returned at the end of the tenancy. Mrs. Bell explained that, at the expiration of the lease, the defendants would get back their deposit, minus any charges for cleaning or damages to the property. Walker remained adamant about not paying the balance of the rent due.

Some time in the middle of December, Clark, the owner of the apartment complex in question, called Walker and informed him that legal action would have to be taken if the rent was not paid. Walker told Clark to proceed in whatever manner he thought was necessary. Clark called a second time and inquired why the rent was not being paid. Walker informed Clark that he had heard of some tenants whose security deposit was not returned. Walker testified that Clark informed him that "he could forget the security deposit." No further effort was made to evict the tenants. Both Walker and Sudermann vacated the apartment by the 29th of

December 1976. Mrs. Bell made further efforts to discuss the payment of rent with Sudermann, but he refused to pay the December rent. Neither Walker nor Sudermann participated in the post-tenancy inspection of the premises. After the defendants had vacated the premises, Mrs. Bell had some cleaning performed in the apartment unit, paying expenses of $9 per labor and $1.50 for cleaning supplies. The apartment was leased to new tenants commencing January 1, 1977.

In March 1977, the landlord, Clark, filed this lawsuit against both Walker and Sudermann. Plaintiff claimed damages for non-payment of rent in the amount of $210, $10 for the late payment fee, and $10.50 for the expenses required in cleaning the apartment. In the action, the plaintiff relied upon K.S.A. 58-2550 of the Residential Landlord and Tenant Act, which deals with the subject of security deposits required in leases of residential property. It provides as follows:

"58-2550. Security deposits; amounts; retention; return; damages for noncompliance. (a) A landlord may not demand or receive a security deposit for an unfurnished dwelling unit in an amount or value in excess of one month's periodic rent. If the rental agreement provides for the tenant to use furniture owned by the landlord, the landlord may demand and receive a security deposit not to exceed one and one-half (1½) month's rent, and if the rental agreement permits the tenant to keep or maintain pets in the dwelling unit, the landlord may demand and receive an additional security deposit not to exceed one-half (½) of one month's rent.

"(b) Upon termination of the tenancy, any security deposit held by the landlord may be applied to the payment of accrued rent and the amount of damages which the landlord has suffered by reason of the tenant's noncompliance with K.S.A. 58-2555 and the rental agreement, all as itemized by the landlord in a written notice delivered to the tenant. If the landlord proposes to retain any portion of the security deposit for expenses, damages or other legally allowable charges under the provisions of the rental agreement, other than rent, the landlord shall return the balance of the security deposit to the tenant within fourteen (14) days after the determination of the amount of such expenses, damages or other charges, but in no event to exceed thirty (30) days after termination of the tenancy, delivery of possession and demand by the tenant. If the tenant does not make such demand within thirty (30) days after termination of the tenancy, the landlord shall mail that portion of the security deposit due the tenant to the tenant's last known address.

"(c) If the landlord fails to comply with subsection (b) of this section, the tenant may recover that portion of the security deposit due together with damages in an amount equal to one and one-half (1½) the amount wrongfully withheld.

"(d) Except as otherwise provided by the rental agreement, a tenant shall not apply or deduct any portion of the security deposit from the last month's rent or use or apply such tenant's security deposit at any time in lieu of payment of rent. If

a tenant fails to comply with this subsection, the security deposit shall be forfeited and the landlord may recover the rent due as if the deposit had not been applied or deducted from the rent due.

"(e) Nothing in this section shall preclude the landlord or tenant from recovering other damages to which such landlord or tenant may be entitled under this act.

"(f) The holder of the landlord's interest in the premises at the time of the termination of the tenancy shall be bound by this section." (Emphasis supplied.)

It should be noted that under subsection (b) of K.S.A. 58-2550, upon termination of the tenancy, any security deposit held by the landlord may be applied to the payment of accrued rent or to damages to the property caused by the tenant. Under subsection (d), however, if a tenant applies or deducts any portion of the security deposit from the last month's rent or applies a deposit at any time in lieu of rent "the security deposit shall be forfeited" and the landlord may recover the rent due as if the deposit had not been applied or deducted from the rent due. The plaintiff contended that the statute means just what it says and, since under the undisputed facts in this case the defendants as tenants deducted the $200 security deposit from the last month's rent, the security deposit was forfeited to the landlord. Under his analysis, the landlord can recover the full $210 December rental payment together with the $10 late charge and damages to the property caused by the tenants. In defending the action, counsel for Walker and Sudermann maintained that the defendants were entitled to a credit for their $200 security deposit. They argued that the security deposit should not be forfeited because the written lease did not contain any forfeiture provision and, furthermore, that the forfeiture provision of K.S.A. 58-2550(d) is unconstitutional in that it deprives a tenant of due process of law and equal protection of the law.

After considering the undisputed evidence presented at the trial and the trial briefs submitted by the parties, the trial court found that subsections (b) and (d) of K.S.A. 58-2550 unconstitutionally discriminate between two classes of tenants and, as a result, deny the defendants the equal protection of the law guaranteed by the 14th amendment to the United States Constitution. Having declared the forfeiture provision of subsection (d) unconstitutional, the trial court applied the $200 security deposit to offset the $210 rent due and owing to the plaintiff, leaving a balance of $10 due. In determining damages, the trial court ruled that the late-payment fee of $10 was not applicable, since the

defendants had attempted to pay their rent by tendering a $10 check and applying the security deposit to the rent. The trial court further found that the $10.50 cleaning charges were not due and owing by the defendants, since any damage to the apartment constituted ordinary wear and tear under the terms of the lease. The trial court awarded judgment in favor of plaintiff in the amount of $10 and costs. The plaintiff then appealed to this court.

We must first consider the constitutional issue: Does the forfeiture provision of K.S.A. 58-2550(*d*) constitute an unconstitutional denial of equal protection of the law? At the outset it would be helpful to consider the Residential Landlord and Tenant Act as a whole and the legislative purpose of enacting it. The legislative history and background for the act is contained in the Report of the Special Committee on Consumer Protection to the 1974 legislature pertaining to proposal No. 17 governing landlord-tenant relations. In its report, the special committee points out that the subject of study was "the need for additional legislation governing landlord-tenant relations." In general, existing Kansas statutes in this area related to the duration and termination of various tenancies and forcible detainer actions. At the time of the report, there was little or no statutory law in Kansas governing the more substantive aspects of landlord-tenant relationships. The report noted that the Uniform Residential Landlord-Tenant Act was approved by the National Conference of Commissioners on Uniform State Laws at its August 1972, annual meeting. The committee then makes the following conclusions and recommendations:

"Upon analysis of the information before the Committee, it became apparent that the antiquated common law concepts and absence of statutory law creates problems and works to the detriment of both landlords and tenants who may very well be operating on different premises. It is the opinion of the Committee that there is a need to statutorily state the various obligations and other elements of tenancy so as to adequately express the modern day concepts of landlord-tenant relations. It should not be made the responsibility of the courts to develop these concepts. Therefore, the Committee recommends that the 1974 legislature enact a comprehensive landlord-tenant code which would establish a single standard of reference for both landlords and tenants." (17-3.)

The Kansas act was enacted in 1975. In its final form, it was based in part on the Uniform Residential Landlord-Tenant Act, but with some modifications. In the act, the legislature set forth the obligations, rights, and remedies of both landlords and ten-

ants. While the act allows a landlord and tenant to negotiate an individualized lease, it prohibits the enforcement of unconscionable provisions (K.S.A. 58-2544), supplies the basic terms in the absence of an agreement (K.S.A. 58-2545), and prohibits the inclusion of certain per se unreasonable terms (K.S.A. 58-2547). The landlord (K.S.A. 58-2553) as well as the tenant (K.S.A. 58-2555) is obligated to perform certain specific duties. Both parties must give a thirty-day notice of intent to terminate a month-to-month tenancy (K.S.A. 58-2570). While the landlord is entitled to enter the leased premises upon reasonable notice at reasonable hours (K.S.A. 58-2557), the tenant may obtain an injunction to prevent an unreasonable entry (K.S.A. 58-2571). The landlord may no longer retain the tenant's personal property left in the apartment (K.S.A. 58-2565 & 58-2567). In addition, the landlord may not retaliate against a tenant for such actions as attempting to enforce his rights, complaining about housing or health code violations, or joining a tenant's organization (K.S.A. 58-2572). While we have not attempted to list all of the provisions of the Kansas Residential Landlord-Tenant Act, it is quite evident from the provisions of the law itself and the legislative history that the legislature considered the concerns and recommendations of both landlords and tenants in drafting a law which attempts to strike a reasonable balance between the positions advocated by the two groups. See Brand, *The New Residential Landlord and Tenant Act*, 44 J.B.A.K. 227 (1975). Under the act, both landlords and tenants gained certain advantages and suffered certain disadvantages.

The defendants' constitutional attack, as noted above, is directed against K.S.A. 58-2550(*d*), which prohibits the tenant from applying his security deposit in lieu of payment of rent. The prohibition is enforced by the forfeiture of the security deposit if the tenant attempts such an application. In examining the forfeiture provision, it is evident that the legislature regarded the security deposit as an important source for the protection of the landlord. This is pointed out in the *defendants'* brief in the following language:

"The security deposit serves the widely understood and accepted function of guaranteeing that the landlord will have a fund to draw upon in the event of a breach by the tenant causing actual damages by way of unpaid rent, waste, or some other breach. The availability of the fund is guaranteed by the landlord's possession of it."

As the defendants apparently recognize, the landlord's retention of a security deposit until the tenants have vacated the leased premises is an important protection of the landlord's investment—as an immediate compensation for damaged property and as an incentive for the tenant to leave the premises in the same condition as he found them. Any diminution in the value or amount of the security deposit increases the landlord's risk while decreasing the tenant's incentive to return the property in a good condition.

The statutory provisions governing the security deposit are designed to operate in an orderly manner to protect both the interests of the landlord and the tenant. K.S.A. 58-2550(*a*) limits the amount of the security deposit in the case of an unfurnished apartment to one month's periodic rent. If the landlord provides furniture, he may demand and receive a security deposit not to exceed one and one-half month's rent. Subsection (*b*) provides a detailed procedure for the retention of the security deposit by the landlord and the return of the deposit or the remaining balance within a limited period of time. Under subsection (*c*) if the landlord wrongfully withholds the security deposit, he is liable in damages to the tenant in an amount equal to one and one-half of the amount wrongfully withheld. Subsection (*d*) of 58-2550 is designed to prevent the tenant from subverting the very purpose for which the landlord is entitled to receive a security deposit from the tenant.

In determining that the forfeiture provision of K.S.A. 58-2550(*d*) was unconstitutional, the trial court compared subsection (*d*) with subsection (*b*). Under the trial court's analysis, the two subsections create two classes of tenants. Subsection (*b*) concerns the first class, those tenants who simply walk away from the apartment. The tenant who silently abandons the apartment is entitled to have his security deposit applied to the payment of any accrued rent or damages. The balance of the security deposit must be mailed to the tenant's last known address. The second class, those tenants who, in the words of the trial court, "try to make an honest agreement with their landlord to apply the tenants' funds held by the landlord to an obligation owed to the landlord," fall under the purview of subsection (*d*). Those tenants are expressly prohibited from applying their security deposit in an attempt to fulfill their obligation to pay rent. In the analysis of the trial court,

the two classes of tenants are treated unequally in that the tenant who "skips" is given credit for his security deposit while "the more forthright and responsible tenant is totally penalized for his conduct" in offsetting the security deposit against the rent due. In examining the treatment afforded the two classes of departing tenants, the trial court was unable to discern any rational relationship between the statutory classification and the legislative objectives of the Residential Landlord and Tenant Act.

In our examination of a challenged statute, we are obliged to presume that the statute is constitutional; it is the duty of the person attacking the statute to overcome that presumption. *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 408 P.2d 877 (1965). Our consideration of the constitutionality of the statute requires us to apply the "minimum rationality" or "reasonable basis" test. *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978); *Henry v. Bauder; Tri-State Hotel Co. v. Londerholm.* See also *Dandridge v. Williams,* 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, *reh. denied* 398 U.S. 914 (1970). Under that test, a statute is "rationally related" to an objective if the statute produces effects that advance, rather than retard or have no bearing on, the attainment of the objective. So long as the regulation is positively related to a conceivable legitimate purpose, it passes scrutiny; it is for the legislature, not the courts, to balance the advantages and disadvantages.

Our examination of the statute convinces us that the statute *is* rationally related to the objectives the statute was enacted to meet. Those persons who attempt to apply the security deposit against their obligation to pay rent are penalized. Without such a penalty, the landlord would be without a means of retaining the full security deposit until the termination of the tenancy. The tenant who abandons his apartment is not equally penalized, but then he is not attempting to stay in the apartment for the full term. When a tenant is ten days in default and has removed a substantial portion of his belongings, the tenant may be assumed to have moved and the landlord is allowed to assume default and immediately re-let the apartment. If the so-called "honest" tenant attempts to apply his security deposit toward rent, the landlord is faced with the prospect of both having possible property damage and being forced to initiate the process of having the tenant

evicted. Even under the expedited forcible detainer procedure of Chapter 61, the landlord may be involved in eviction proceedings for over two and a-half weeks after the rent was originally due. (See time limits in K.S.A. 61-2304; 61-2305; 61-2306; 61-2308.)

In examining the reasonableness of the forfeiture provision of K.S.A. 58-2550(*d*), it is important to remember the *tenant's* rights in regard to the security deposit. Under K.S.A. 58-2550(*c*) a landlord who wrongfully retains a security deposit is liable for the amount due *and* damages of one and one-half the amount due. In light of that provision, the tenant has no reason to fear the wrongful retention of the security deposit; the landlord has a maximum of 30 days to return the full deposit or a partial deposit and an itemized account of how any of the deposit was spent. In another statute weighted in the tenant's favor, a tenant is given the right to recover the greater of his actual damages or one-and-one-half month's rent if he is unlawfully prevented from entering his apartment by the landlord (K.S.A. 58-2563).

Although the statutory forfeiture of the security deposit does not violate the equal protection clause, it does impose a drastic remedy and must be strictly construed. Subsection (*d*) has been fully set out above. It provides that "the security deposit shall be forfeited" if the tenant attempts to apply the deposit toward the payment of rent. The definition section of the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2543, defines a security deposit as follows:

"(*m*) 'Security deposit' means any sum of money specified in a rental agreement, however denominated, to be deposited with a landlord by a tenant as a condition precedent to the occupancy of a dwelling unit, *which sum of money,* or any part thereof, *may be forfeited under the terms of the rental agreement* upon the occurrence or breach of conditions *specified therein."* (Emphasis supplied.)

Our reading of the above definition convinces us that, in order to be effective, the forfeiture provision authorized by K.S.A. 58-2550(*d*) must be *actually set forth in the rental agreement* itself. The bold printing of the forfeiture provision in the lease would satisfy the requirements of a security deposit "forfeited under the terms of the rental agreement" while also satisfying the fundamental notions of due process and essential fairness. The exact amount to be forfeited must be negotiated between the two parties to the lease.

We likewise reject the contention that the forfeiture provision

constitutes a denial of due process of law. K.S.A. 58-2550 simply authorizes a landlord and tenant to provide in a lease agreement for the forfeiture of the security deposit in the event the tenant violates his lease obligations by attempting to apply the security deposit on a rental payment. Ultimately, the landlord and tenant must negotiate their own lease agreement. If they see fit to include such a forfeiture provision in the lease, we do not see how the tenant can reasonably claim that he has been denied due process of law.

The lease involved in the case now before us does not contain the forfeiture provision authorized by K.S.A. 58-2550(*d*), although it does prohibit the application of the security deposit to the payment of rent. Since the forfeiture provision was not a part of the rental agreement, we have concluded that the plaintiff is entitled to recover only his actual damages that resulted from the attempted application of the security deposit to the rent. Since no forfeiture was effective, the $200 deposit must be applied to the $210 rental payment due, leaving a balance owing of $10. It follows that the trial court reached the right result but for the wrong reason. The balance of unpaid rent owing is thus $10. We disagree with the court, however, as to the obligation of the tenants to pay the $10 late-payment fee provided for in the lease. The lease provided for a $10 late-payment fee if the rent was not paid for by the fourth day of the month. Here the defendants' attempted application of the security deposit toward the December rent was clearly in violation of the lease agreement. Since it cannot constitute a payment of rent and since the proper rent in the amount of $210 was not tendered to the plaintiff by the defendants by the fourth day of December 1976, the $10 late-payment fee required by the lease agreement should have been assessed against the defendants as a part of the trial court's judgment.

The trial court's finding that the cleaning expenses, incurred by the plaintiff after the least was terminated, were for ordinary "wear and tear" is supported by the evidence. The plaintiff was not entitled to recover the $10.50 cleaning fee.

The judgment of the district court is reversed and remanded with directions to enter judgment in favor of the plaintiff and against the defendants in the amount of $20 and costs.