(840 P.2d 1206)

No. 67,799

STEVE BURGESS, d/b/a GARDEN SPOT RENTALS, *Appellee*, v. JACK
STROUD and JUDY STROUD, *Appellants*.

Opinion filed October 30, 1992.

*Jon R. Craig*, of Garden City, for appellants.

*Michael K. Ramsey*, of Hope, Mills, Bolin, Collins & Ramsey, of Garden City, for appellee.

Before BRISCOE, C.J., BRAZIL and RULON, JJ.

RULON, J.: Jack and Judy Stroud, defendants, appeal the judgment of the district court which ordered a forfeiture of defendants' security deposit under a residential lease agreement with Steve Burgess, plaintiff. We reverse and remand the cause with directions.

Essentially, we must decide if a tenant's tendering of notice to vacate leased premises unaccompanied by any action to pay late rent is sufficient to forfeit the tenant's security deposit under K.S.A. 58-2550(d).

The undisputed facts reduced to their essence are as follows:

Plaintiff, d/b/a Garden Spot Rentals, filed a limited action against defendants for various amounts due and owing upon their vacating property leased to them by plaintiff. Plaintiff alleged he and the defendants entered into a written residential lease agreement on April 1, 1990, and the defendants vacated the residence without giving 30 days' written notice, thereby forfeiting their security deposit pursuant to K.S.A. 58-2550(d). Plaintiff further alleged that the defendants owed $669 in unpaid rent for February 1 through March 25, 1991, when they left the premises. Plaintiff requested this amount along with damages for various repairs he made to the property after the defendants left, for a total of

$1,317. Plaintiff asked the district court to award him this total, the forfeited security deposit, and costs.

The defendants admitted entering into the lease agreement on April 1, 1990, and owing plaintiff $669 in unpaid rent when they quit the premises. Defendants specifically denied the allegation that their notice to vacate was insufficient. Furthermore, defendants filed a counterclaim for the return of their security deposit.

The lease before us established rent of $440 per month with rent being due on the first day of each month. The term of the lease was from April 1, 1990, through March 31, 1991. The defendants paid a security deposit of $400. The lease contained these provisions:

"2. LEASE AGREEMENT

"If notice is not given by either party by the end of the 11th month Contract will continue on a thirty day basis. Thirty days written notice must be given in order to terminate this Lease Agreement. All security deposits shall be forfeited and the Landlord may recover the rent due as if the deposit had not been applied or deducted from the rent due, if thirty days written notice is not given to terminate Lease. Notice must be (30) days prior·to the next periodic rental due date. This (30) day notice requirement is effective as of the date of the agreement. It is not dependent upon the Tenant actually taking possession. In other words and by further clarification to terminate this lease, the Tenant must give (30) days notice even if the Tenant has not actually taken possession.

. . . .

"4. SECURITY DEPOSIT

"Tenants [*sic*] hereby agrees to pay a security deposit of $400.00, to be refunded upon vacating, return of the key to the office and termination of this contract according to the terms herein agreed. This deposit will be held to cover any possible damages to the property. No interest will be paid on this money and in no case will it be applied by the Tenant to back or future rent. It will be held intact by Landlord until at least fourteen days after Tenants have vacated the property. Landlord will inspect the premises thoroughly and assess any damages and/or needed repairs. This deposit money minus any repairs, damages, charges and expenses of cleaning, will then be returned to Tenant with a written explanation of deductions, within thirty days after they have vacated the property.

. . . .

"10. FORFEITURE

"THE TENANT MAY NOT APPLY OR DEDUCT ANY PORTION OF THE SECURITY DEPOSIT FROM THE LAST MONTH'S RENT OR USE OR APPLY SUCH SECURITY DEPOSIT AT ANY TIME IN LIEU OF

PAYMENT OF RENT. IF TENANT FAILS TO COMPLY WITH THIS SECTION, THE SECURITY DEPOSIT SHALL BE FORFEITED AND THE LANDLORD MAY RECOVER THE RENT DUE AS IF THE DEPOSIT HAD NOT BEEN APPLIED OR DEDUCTED FROM THE RENT DUE."

Ultimately, the district court found that plaintiff and defendants entered into a written rental contract providing for forfeiture of the security deposit. The court further found in paragraph 10 of the contract the parties contemplated circumstances under which the deposit could be forfeited, which are very similar to the circumstances described in K.S.A. 58-2550(d). Additionally, the court found the only way a tenant could act to forfeit a security deposit under this statute was "by conduct expressed or implied by not paying rent at the time the notice to terminate [is] given."

The district court concluded that defendants simply sent notice of their termination of the lease without payment on the rent due and that notice without payment was sufficient to result in a forfeiture of the deposit under paragraph 10 of the lease and K.S.A. 58-2550(b) and (d). Additionally, the district court awarded plaintiff $1,153 in damages for repair and cleaning of the premises.

Before us, the defendants contend that K.S.A. 58-2550(d) requires that a tenant affirmatively act to apply the security deposit to rent due before it is forfeited. Defendants argue they only gave notice of their intent to vacate without affirmatively indicating that they intended their security deposit to be applied to rent they owed; therefore, the deposit was not forfeited. Plaintiff argues that pursuant to the language of the statute, the intent to apply the security deposit to rent due is properly inferred from a notice to vacate unaccompanied by payment of the rent.

Here, the defendants mailed to plaintiff on March 1, 1991, notice of their intent to vacate the leased premises. Not only did the defendants owe rent for the month of March on March 1, they were delinquent on part of the rent for the month of February. Yet they did not include any rent payment with their notice to vacate. Additionally, the parties also agree that the defendants did not otherwise attempt to pay rent due before leaving the premises.

Our standard of review is clear. Whether K.S.A. 58-2550(d) permits forfeiture of a security deposit under these circumstances

is a question of statutory interpretation. " 'Interpretation of a statute is a question of law.' " *Todd v Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

K.S.A. 58-2550 reads in pertinent part as follows:

"(b) Upon termination of the tenancy, any security deposit held by the landlord may be applied to the payment of accrued rent and the amount of damages which the landlord has suffered by reason of the tenant's non-compliance with K.S.A. 58-2555 and the rental agreement, all as itemized by the landlord in a written notice delivered to the tenant. If the landlord proposes to retain any portion of the security deposit for expenses, damages or other legally allowable charges under the provisions of the. rental agreement, other than rent, the landlord shall return the balance of the security deposit to the tenant within fourteen (14) days after the determination of the amount of such expenses, damages or other charges, but in no event to exceed thirty (30) days after termination of the tenancy, delivery of possession and demand by the tenant. If the tenant does not make such demand within thirty (30) days after termination of the tenancy, the landlord shall mail that portion of the security deposit due the tenant to the tenant's last known address.

. . . .

"(d) Except as otherwise provided by the rental agreement, a tenant shall not apply or deduct any portion of the security deposit from the last month's rent or use or apply such tenant's security deposit at any time in lieu of payment of rent. If a tenant fails to comply with this subsection, the security deposit shall be forfeited and the landlord may recover the rent due as if the deposit had not been applied or deducted from the rent due."

" 'It is a fundamental rule of statutory construction to which all others are subordinate that the intent of the legislature governs when the intent can be ascertained.' " *Martindale v. Tenny*, 250 Kan. 621, 626, 829 P.2d 561 (1992).

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.' " *Todd v. Kelly*, 251 Kan. at 516, (quoting *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 [1975]).

In reading and construing the pertinent sections of K.S.A. 58-2550 together, we understand the legislature intended a security deposit to do just what its label indicates—secure the landlord from expenses remaining unpaid by the tenant after the tenant quits the premises. Subsection (b) of the statute allows a landlord to apply the security deposit to payment of accrued rent and to the amount of damages suffered as a result of a tenant's noncompliance with duties imposed either by statute or the rental agreement. These damages may include the cost of cleaning and repairing the premises upon the tenant's termination of the lease. See K.S.A. 58-2555. This security for the landlord is protected by subsection (d), which states the tenant forfeits the deposit if the tenant applies or deducts any portion of the deposit from the last month's rent, or uses or applies the deposit at any time during the tenancy in lieu of payment of rent. Our Supreme Court recognized the significance of this protection in *Clark v. Walker*, 225 Kan. 359, 364-65, 590 P.2d 1043 (1979):

"In examining the forfeiture provision, it is evident that the legislature regarded the security deposit as an important source for the protection of the landlord. This is pointed out in the *defendants'* brief in the following language:

'The security deposit serves the widely understood and accepted function of guaranteeing that the landlord will have a fund to draw upon in the event of a breach by the tenant causing actual damages by way of unpaid rent, waste, or some other breach. The availability of the fund is guaranteed by the landlord's possession of it.'

As the defendants apparently recognize, the landlord's retention of a security deposit until the tenants have vacated the leased premises is an important protection of the landlord's investment—as an immediate compensation for damaged property and as an incentive for the tenant to leave the premises in the same condition as he found them. Any diminution in the value or amount of the security deposit increases the landlord's risk while decreasing the tenant's incentive to return the property in a good condition."

Both parties here cite and discuss *Clark* in support of their respective positions on whether delivery of notice to vacate without payment of rent due forfeits a security deposit under K.S.A. 58-2550(d). *Clark* involved a constitutional challenge to K.S.A. 58-2550(b) and (d).

The defendants argue the tenant in *Clark* affirmatively acted to apply the security deposit to the rent due by tendering a check

for only the balance remaining after the deposit was deducted from the amount of monthly rent. Defendants further argue, in contrast, that they took no action to indicate their security deposit was to be applied to the rent they owed plaintiff. Plaintiff, on the other hand, argues the defendants' silence is action similar to the tendering of the check in *Clark* from which the intent to apply the deposit to the rent may be inferred.

The *Clark* court, in discussing the constitutionality of K.S.A. 58-2550(d), said:

"Those persons who attempt to apply the security deposit against their obligation to pay rent are penalized. Without such a penalty, the landlord would be without a means of retaining the full security deposit until the termination of the tenancy. The tenant who abandons his apartment is not equally penalized, but then he is not attempting to stay in the apartment for the full term. . . . If the so-called 'honest' tenant attempts to apply his security deposit toward rent, the landlord is faced with the prospect of both having possible property damage and being forced to initiate the process of having the tenant evicted." 225 Kan. at 366-67.

The *Clark* court went on to say that "the statutory forfeiture of the security deposit does . . . impose a drastic remedy and must be strictly construed. Subsection (d) . . . provides that 'the security deposit shall be forfeited' if the tenant attempts to apply the deposit toward the payment of rent." The court held that a forfeiture clause must be contained in the rental agreement to be effective against a tenant. Because the agreement involved in *Clark* contained a provision only prohibiting the application of the security deposit to rent due, but not for its forfeiture if such was done, tenant's deposit was not forfeited. The court awarded judgment for landlord in the amount of $20, the total of the balance due on the rent after application for the security deposit and a late payment fee. 225 Kan. at 367-68.

We believe because the remedy sought here is a harsh one and must be strictly construed, the statutory forfeiture provision of K.S.A. 58-2550(d) requires affirmative action on the part of the tenant and not simply inaction or silence such as delivering notice to vacate without any payment for rent then due. The tenant in *Clark* did affirmatively act to indicate his intent to apply the security deposit to the last month's rent. He not only tendered a check for the balance of the rent due after deducting the amount

of the deposit, he expressly discussed his reasons for doing so with the building manager. The defendants here did nothing in reference to their security deposit, either when they gave notice or during the remainder of their leasehold. Under this circumstance, it would be unjustly harsh for us to conclude defendants intended to forfeit their deposit. Equally, it would be unjust under this circumstance for plaintiff to receive a $400 windfall when he has already obtained a judgment for the rent due and damages to the premises. We are persuaded the legislature intended that K.S.A. 58-2550(d) be construed to require an affirmative act by a tenant in applying a security deposit to rent due before the deposit is forfeited.

Plaintiff incidentally argues to us that defendants forfeited their security deposit by failing to give plaintiff timely notice of their intent to terminate the lease.

We need not reach that issue because the district court made no such finding on whether the defendants' notice to vacate mailed March 1, 1991, was untimely and caused forfeiture of their security deposit. As the district court made no findings regarding this issue and no objection to this omission appears in the record on appeal, the omission in the district court's findings presents nothing for appellate review. *First American Investment Group, Inc. v. Henry*, 11 Kan. App. 2d 671, 678, 732 P.2d 792 (1987).

We reverse the judgment declaring the defendants forfeited their $400 security deposit and remand the cause with instructions that the district court order the security deposit be applied to plaintiff's judgment for unpaid rent and damages.