No. 52,055

MICHAEL J. PATTERSON, *Appellant,* v. MISSOURI VALLEY STEEL, INC.,
*Appellee.*

(625 P.2d 483)

Opinion filed March 25, 1981.

*Charles A. Briscoe,* of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *Philip A. Harley,* of the same firm, was on the brief for the appellant.

*Richard F. Hayse,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Plaintiff, Michael J. Patterson, appeals from an order of the Osage District Court sustaining a motion to dismiss filed by Missouri Valley Steel, Inc., a dissolved corporation, and dismissing that defendant from this lawsuit. The sole issue is whether this action was timely commenced against Missouri Valley Steel.

This is an action for damages for personal injuries and wrong-

ful death arising out of the capsizing of the Whippoorwill showboat on Lake Pomona on June 17, 1978. The action is brought by Patterson, a passenger who sustained personal injuries, and whose expectant wife was killed. He commenced the action on November 29, 1978, against Bruce L. Rogers and Veda Rogers, the operators of the showboat. Mr. and Mrs. Rogers were served with summons on the day the action was filed; they have answered, and the action remains pending and undetermined against them in the lower court; they do not appear in this appeal. Other defendants, added after the action was filed, also do not appear here. The only parties appearing are the plaintiff and defendant, Missouri Valley Steel, Inc.

On August 28, 1979, plaintiff filed a motion for leave to amend his petition, and to add additional parties defendant, including Missouri Valley Steel, Inc. The motion was granted and the amended petition was filed August 29, 1979. Personal service was made upon F. C. Bannon, described in the summons as resident agent of Missouri Valley Steel, Inc., on August 30, 1979. The amended petition alleges that the defendant:

". . . Missouri Valley Steel, Inc., was a corporation organized and existing under and by virtue of the laws of the State of Kansas. That said corporation was liquidated on or about August 1, 1976, but continues to be a corporation for the purposes of suit, under and by virtue of K.S.A. 17-6807 and may be served with process by serving its resident agent, F. C. Bannon . . . ."

Missouri Valley responded within the 20-day period by filing a motion to dismiss for various reasons. It alleged that Missouri Valley "was dissolved on August 13, 1976. By the terms of K.S.A. 17-6807, such a dissolved corporation would be continued for three years after its dissolution for the purpose of prosecuting and defending suits by or against it. Under K.S.A. 60-203 an action is deemed commenced upon the filing of the petition if service is made within 90 days thereafter. However . . . this Court did not allow the filing of this petition until August 28, 1979, which was over two weeks past the three year limitation period mandated by K.S.A. 17-6807. . . . [T]his named defendant had no notification whatsoever that any action by this plaintiff was being brought against it until over three years after its dissolution."

The trial court heard arguments of counsel on various motions

in this and several related cases and on January 2, 1980, sustained Missouri Valley's motion to dismiss. The trial court said:

"Keeping in mind Missouri Valley Steel dissolved August 13, 1976, and the three years limit on actions set by K.S.A. 17-6807 would have been up August 13, 1979, the court finds that Patterson's filing of his amended petition, August 28, 1979, adding Missouri Valley Steel as a defendant, was out of time. Missouri Valley Steel is therefore dismissed as a defendant in the Patterson Case . . . ."

The court concluded its order by saying in paragraph No. 15:

"The court finds that this is a final order but it is not an appealable order until such time as all issues of the cases as between all the parties as filed are determined. K.S.A. 60-254."

Next, on January 28th, the court heard a motion to modify its ruling in various respects. It modified paragraph No. 15 of its prior order (the last paragraph set forth above), so that it reads as follows:

"The Court finds that this is and shall be the final decision of the Court pursuant to K.S.A. 60-2102(a)(4). The Court further finds that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation pursuant to K.S.A. 60-2102(b). Mindful that there are multiple parties in each of these six cases, *the Court also expressly determines that there is no just reason for delay and hereby expressly directs the entry of judgment accordingly pursuant to K.S.A. 60-254(b)."* (Emphasis supplied.)

K.S.A. 60-254(*b*) reads in pertinent part as follows:

"(*b*) *Judgment upon multiple claims.* When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form or decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The journal entry incorporating the trial court's ruling on the motion to modify was approved and filed March 24, 1980. Four days later, on March 28, plaintiff filed an application for interlocutory appeal pursuant to K.S.A. 60-2102(*b*). That statute, insofar as is material here, is as follows:

"60-2102. **Invoking jurisdiction of court of appeals.**

"*(a) As of right.* Except for any order or final decision of a district magistrate judge, the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from:

. . . .

"(4) A final decision in any action . . . .

"(*b*) *Other appeals.* When a district judge or associate district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, said judge shall so state in writing in such order. The court of appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten (10) days after the entry of the order under such terms and conditions as the supreme court may fix by rule."

On April 10, 1980, the court of appeals entered an order that plaintiff's application for an interlocutory appeal "is denied as moot as plaintiff may appeal as a matter of right per K.S.A. 60-2102(*a*)." Plaintiff promptly served a notice of appeal from the trial court's order of January 2, as modified March 24, on opposing counsel on April 15, filed it in the office of the clerk of the district court on April 17, and in the office of the clerk of the appellate courts on April 21, 1980. We hold that when a trial court, in an action involving multiple parties, expressly determines that there is no reason for delay and directs the entry of a final judgment against one of the parties pursuant to K.S.A. 60-254(*b*), such a judgment may be appealed as a matter of right under K.S.A. 60-2102(*a*)(4).

After this appeal was taken, the matter was transferred to the supreme court by order entered January 7, 1981, pursuant to K.S.A. 1980 Supp. 20-3018(*c*). Having determined that we have jurisdiction of the appeal, we now turn to the principal issue presented.

The trial court found, and the parties agree, that Missouri Valley Steel, Inc., was voluntarily dissolved on August 13, 1976. A certificate of dissolution was filed by the corporation in the office of the Secretary of State and in the office of the Register of Deeds of Leavenworth County, in which the registered office of the corporation was located, on that date. This action was not commenced against Missouri Valley until more than three years after August 13, 1976.

Article 68 of Chapter 17 of the Kansas Statutes Annotated is that part of the Kansas General Corporation Code which governs

the dissolution of corporations and the disposition of corporate assets upon dissolution. K.S.A. 17-6807 provides for the continuation of corporate existence, for limited purposes, following dissolution. It reads:

17-6807. "All corporations, whether they expire by their own limitation or are otherwise dissolved, including revocation or forfeiture of articles of incorporation pursuant to K.S.A. 1972 Supp. 17-6812 or 17-7510, shall be continued, nevertheless, for the term of three (3) years from such expiration or dissolution or for such longer period as the district court in its discretion shall direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, and for the purpose of such actions, suits or proceedings, the corporation shall be continued a body corporate beyond the three-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the district court."

The Kansas comment to 17-6807 reads as follows:

"The provisions of this section and former K.S.A. 17-3606 are essentially the same in enumerating the specific purposes for which corporate existence may be extended for a term of three years after dissolution, but 17-6807 authorizes the court, in its discretion, to extend the three-year period, which was not authorized by 17-3606. The new section is patterned after Delaware § 278. It was amended in 1973 to provide for the section's application to corporations whose articles have been revoked or forfeited pursuant to 17-6812 or 17-7510."

K.S.A. 17-6808, providing for the appointment of trustees or receivers of dissolved corporations, reads:

17-6808. "When any corporation organized under this act shall be dissolved in any manner whatever, the district court, on application of any creditor or stockholder of the corporation, or on application of any one, who, in the court's discretion, shows good cause therefor, at any time, either may appoint one or more of the directors of the corporation to be trustees, or may appoint one or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the court shall think necessary for the purposes aforesaid."

Section 278 of the Delaware corporation code, 8 Del. C. Ann. § 278, after which K.S.A. 17-6807 is patterned, reads:

"§ 278. *Continuation of corporation after dissolution for purposes of suit and winding up affairs.*

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings, be continued bodies corporate beyond the 3 year period and until any judgments, orders, or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery. (8 Del. C. 1953, § 278; 56 Del. Laws, c.50.)"

Section 279 of the Delaware corporation code is virtually the same as K.S.A. 17-6808.

Plaintiff, although acknowledging that suit was filed against Missouri Valley more than three years after dissolution, contends that under K.S.A. 17-6807, the district court is authorized to extend the corporate life for the purpose of defending the action against it, and that corporate existence continues beyond the three-year period. Missouri Valley, on the other hand, contends that a district court may not extend the existence of the corporation by order entered after the expiration of the three-year period, when no application for an extension of continued corporate existence is made within the three-year period. In short, the corporation argues that its corporate existence or status terminated with the expiration of the three-year period after dissolution (except for the purpose of defending suits brought against it before the end of that period) and that thereafter the district court is given no power to *revive* the corporation; it can only *extend* corporate life if it makes such an order while the corporation still has life and is in existence—*i.e.,* during the three-year period.

We have not had occasion to interpret this section, but there are a number of cases in other jurisdictions interpreting § 278 of the Delaware corporation code. Plaintiff relies upon three early cases in each of which the corporation had been involuntarily dis-

solved for failure to pay franchise taxes. These are: *Harned v. Beacon Hill Real Estate Co.,* 9 Del. Ch. 411, 84 A. 229 (1912); *Wax v. Riverview Cemetery Co.,* 41 Del. (2 Terry) 424, 24 A.2d 431 (Super. Ct. for New Castle County, 1942); and *Ross v. Venezuelan-American Independent Oil Pro. Ass'n, Inc.,* 230 F. Supp. 701 (D. Del. 1964).

The first two cases involve title to real estate. In *Harned,* the corporation held title to real estate and failed to dispose of it during the three-year wind-up period. Thereafter, former stockholders sought to have a receiver appointed to sell the land; the corporation was made a defendant, and its attorney appeared and filed an answer, signed by its president and two directors and attested by the secretary. The receiver sold the land under court order; the purchaser sought to overturn the sale of the land on the theory that the corporation did not have capacity to be named a defendant in the proceedings to appoint the receiver; *i.e.,* could not be sued. The court held that it was necessary to name the corporation a defendant, in order to give it notice of the appointment of the receiver, and it affirmed the judgment appointing a receiver and ordering the land sold. In *Wax,* title to real estate was challenged on the basis that the corporate holding company which once held title to real estate, and gave a mortgage on it, and which company's charter had been revoked for failure to pay franchise taxes nine years before suit was commenced, was not an existing corporation against whom the foreclosure judgment could be taken. The court held that the forfeiture of the corporate charter for failure to pay taxes only forfeited the corporate right to do business; it did not extinguish the corporation as a legal entity and thus the corporation could continue to serve as a repository of title, and as an obligor of a debt, and was subject to suit in the foreclosure action.

The *Wax* and *Harned* cases were followed, without enthusiasm, by the United States District Court in *Ross v. Venezuelan-American Independent Oil.* The corporation's charter had been revoked for failure to pay Delaware franchise taxes. Two attorneys, employed by the corporation during the three-year wind-up period, sued after the period expired to recover fees for services rendered. The court interpreted §§ 278 and 279 of the Delaware corporation code to allow entry of judgment against a corporation after dissolution only if the action were begun before dissolution

or within three years thereafter or if a receiver were appointed under § 279. The court, however, felt that it was bound by the precedent established in *Wax,* "[d]espite what appears to be the questionable construction placed upon the dissolution law" therein, and allowed the attorneys' claims. 230 F. Supp. at 704.

The gist of the *Wax, Harned* and *Ross* cases seems to be that a corporation dissolved involuntarily for failure to pay franchise taxes continues to exist as a legal entity since it may revive itself by paying its back taxes. We note that the Kansas version of the law, K.S.A. 17-6807, contains this wording describing "dissolved" not found in Delaware § 278:

"[I]ncluding revocation or forfeiture of articles of incorporation pursuant to K.S.A. 1972 Supp. 17-6812 [revocation of articles of incorporation as a result of quo warranto] or 17-7510 [forfeiture of articles for failure to file annual report and pay the annual taxes]."

This language was added to the Kansas act in 1972, some years after and apparently in response to the *Wax, Harned* and *Ross* decisions.

*Smith-Johnson Steamship Corporation v. United States,* 231 F. Supp. 184 (D. Del. 1964), was a libel action brought against the United States by the corporation during the three-year period immediately following its voluntary dissolution. After the three-year period had expired, the United States attempted to assert a cross-libel, arising from the same contract. The court held that this was an independent cause of action, and that it was barred by the three-year limitation set out in Delaware's § 278. The court said:

"While § 278 represents a legislative policy declaring that all suits by or against dissolved corporations must be commenced within three years after dissolution, it is not, in itself, a statute of limitations. This clearly appears from the ensuing § 279 authorizing the Court of Chancery at any time, either before or after the corporation's affairs have been wound up, to appoint a receiver to prosecute or defend suits by or on behalf of the corporation.

"Nevertheless, while not a statute of limitations, it is a clear expression of a legislative policy normally prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution and, as such, by way of analogy justifies the application of decisions interpreting statutes of limitations.

"It is settled law that affirmative counterclaims may not be instituted after the applicable period of the statute of limitations has expired . . . .

"It follows that [the corporation] lacks capacity to be sued through the cross-libel now before this court." 231 F. Supp. at 186-87.

The earlier cases cited above were all considered and the Delaware law was carefully analyzed by the United States District Court in the case of *Johnson v. Helicopter & Airplane Services Corp.*, 404 F. Supp. 726 (D. Md. 1975), which involved a determination of the capacity of a dissolved corporation to be sued, in a products liability action, more than three years after its voluntary dissolution. The court said:

"At common law, the dissolution of a corporation was its civil death; dissolution abated all pending actions by and against a corporation, thus terminating abruptly its capacity to sue and be sued. [Citations omitted.]

"In order to alter the common law and prolong the life of a corporation past dissolution, statutory authority is necessary. [Citations omitted.]

"The common law has been supplanted in Delaware, as in all states, by a statute which prolongs the life of a corporation in order to allow the corporation to dispose of its affairs in an orderly fashion. Section 278 of the Delaware Corporation [Code] . . . provides for the continued limited existence of a corporation after dissolution . . . .

"The continued existence of the corporation is thus strictly limited under Delaware law to a few specific situations:

"First, under Section 278, a corporation's existence is continued for three years after dissolution. During that time, the corporation may not conduct the business for which it was originally incorporated. [Citations omitted.] It may conduct only such business as is 'incidental and necessary to . . . wind up.' [Citations omitted.] The power given to the corporation to dispose of its affairs during this period expressly includes the capacity to sue and be sued; Delaware traditionally held that after dissolution, a corporation could sue and be sued *only* during this period. [Citations omitted.]

"Second, under Section 278, the three-year winding up period may be extended by the Court of Chancery. Such an extension would probably prolong the corporation's capacity to sue and be sued.

"Third, automatic prolongation of the life of the corporation beyond the three-year period is provided for by Section 278 for the limited purpose of allowing actions previously commenced by and against the corporation to continue to their expiration. This obviously does not prolong the capacity of the corporation to sue and be sued, but maintains the continuance of the corporation for the benefit of the existing suits.

"Fourth, Section 279 of the corporation law provides that the Court of Chancery may at any time appoint receivers or trustees to conduct the business of the corporation. The statute expressly provides that the appointment of a receiver or trustee continues or revives the corporation's capacity to sue and be sued.

"In summary, then, notwithstanding other indicia of corporate existence continued by the statutes, Sections 278 and 279, read jointly, seem to indicate that a corporation has capacity to sue or be sued 1) during the three-year winding-up period; 2) beyond three years if an extension has been procured; or 3) if a receiver or trustee has been appointed by the Court of Chancery. [Citations omitted.]

"None of these conditions is present in this case, where suit was brought fully a year after the three-year winding-up period provided in Section 278 had passed.

An extension of this period was never procured and a receiver has never been appointed." 404 F. Supp. at 730-32.

The court distinguished the earlier Delaware cases on the ground that they dealt with involuntary dissolution and were based on a fiction of corporate capacity intended to preserve the marketability of title to real property. It found the *Smith-Johnson* logic persuasive, noting that the opinion in that case

"[I]nterpreted Section 278 wisely and with an appropriate consideration and resolution of the two conflicting principles which gave rise to Section 278. The first of these principles is that corporations should not be able to avoid their debts and other liabilities by dissolution. It is for this purpose, and to enable corporations to dispose of their affairs in an orderly fashion, that the three-year winding-up provision was created.

"The second principle reflected in Section 278 is that there should be a definite point in time at which a corporation is terminated. [Citations omitted.] To allow a proliferation of suits dependent upon the time which it takes a corporation to wind up its business would be unfair to the corporation and contrary to the purpose of orderly and timely dissolution. Continued prosecution of such suits would contribute to a 'continual dribble of business activity' which might prolong the winding-up process indefinitely while directors and shareholders become harder to locate and records of the corporation become stale or misplaced. [Citations omitted.]

"Section 278 represents a workable compromise between these two principles. The corporation is continued so that those who have been aggrieved by its activities may come forward with their claims. But after a reasonable time, the right to assert such claims is extinguished and the corporation is allowed to close its affairs without further threat of additional financial liabilities." 404 F. Supp. at 735.

The court concluded that the corporate defendant had lost the capacity to sue and be sued, and sustained its motion to dismiss. Recent Illinois and Colorado cases follow the same rationale. See *Canadian Ace Brewing Co. v. Anheuser-Busch, Inc.*, 448 F. Supp. 769 (N.D. Ill. 1978), and *Casselman v. Denver Tramway Corp.*, 195 Colo. 241, 577 P.2d 293 (1978).

We have carefully considered the statute, K.S.A. 17-6807, the Delaware section upon which it is based, and the cited cases. We conclude that the rationale of the *Johnson* case should be followed in this state. We therefore hold that under K.S.A. 17-6807,

(1) A Kansas corporation may sue or be sued during the three-year wind-up period immediately following its dissolution, whether voluntary or involuntary.

(2) A district court may extend the wind-up period and thus extend the time during which a dissolved Kansas corporation

may sue or be sued only if application for such extension is made prior to the end of the three-year period.

(3) A dissolved Kansas corporation may sue or be sued during the period of time that a trustee or receiver for the corporation is appointed and acting pursuant to K.S.A. 17-6808.

(4) Absent a court-ordered extension or the appointment of a trustee or receiver, a Kansas corporation which has been dissolved, either voluntarily or involuntarily, may not sue or be sued after the three-year period has ended.

Missouri Valley Steel was not served with summons, and no action by Patterson was pending against it, until after the expiration of the three-year period following voluntary dissolution. No extension was granted by the district court during the three-year period, and no trustee or receiver was sought or appointed. We conclude that the district court was correct in holding, in effect, that Missouri Valley had lost the capacity to sue or be sued, and in sustaining the motion to dismiss.

The judgment is affirmed.