(732 P.2d 792)

No. 59,072

FIRST AMERICAN INVESTMENT GROUP, INC., A KANSAS CORPORATION; and FIRST AMERICAN INVESTMENT GROUP SERVICE DIVISION, INC., A KANSAS CORPORATION, *Plaintiffs/Appellees* and *Cross-Appellants,* v. BEVERLY A. HENRY, JAMES A. LUCAS, ROBERT E. GORDINIER, GREGG MEÈNS, and LYLA A. ACCARDI, *Defendants/Appellants* and *Cross-Appellees.*

Opinion filed February 12, 1987.

*Randall J. Forbes* and *Kevin M. Fowler,* of Frieden & Forbes, of Topeka, for appellants/cross-appellees Henry, Lucas, Gordinier, and Meens.

*Howard L. Lyden,* of Topeka, for appellant/cross-appellee Accardi.

*F. G. Manzanares,* of Topeka, for appellees/cross-appellants.

Before DAVIS, P.J., PARKS and MEYER, JJ.

MEYER, J.: This appeal involves a contempt proceeding arising out of a temporary injunction issued to enjoin defendants from competing with plaintiffs, their former employers.

Plaintiffs, First American Investment Group, Inc., and First American Investment Group Service Division, Inc., are Kansas corporations engaged in the business of buying and selling "jumbo" ($100,000.00 or over) certificates of deposit for a broad range of investors. Defendants are former employees of the

plaintiffs, and held the title of "Account Executives." As account executives, defendants were to solicit new investors and "roll over" the investments of existing customers.

Between the last week of July 1985 and the first week of August 1985, defendants left the employ of First American and went to work for Goldstone Investment Corporation. Goldstone Investment Corporation engages in the same type of money-brokering activity as First American.

On August 12, 1985, plaintiffs commenced an action against defendants seeking a temporary and permanent injunction to restrain defendants from using plaintiffs' customer lists, confidential information, and trade secrets which defendants acquired while working for the plaintiffs. Further, plaintiffs sought injunctive relief to restrain defendants from "operating or engaging in" a business competitive with the plaintiffs. In essence, plaintiffs sought the enforcement of the following provisions of the employment contracts of defendants Henry, Lucas, and Meens, which provided:

"[First American] has developed specialized customer lists of Investors and Depositories, knowledge, methods, and techniques for obtaining engagements by and providing services to Investors and Depositories. The parties agree that such knowledge, methods, and techniques . . . are unique and confidential, and constitute valuable proprietary rights and trade secrets of First American, Kansas."

"[T]he Confidential Information constitutes important and confidential trade secrets which materially affect the successful conduct of the Business of the Company and its goodwill."

"Employee agrees that any relationships developed between the Employee and the Investors and Depositories . . . are developed at the sole expense of the Company and any information obtained by Employee concerning the Investors or Depositories is obtained solely within the employ of Company and is the sole and exclusive property of the Company."

"Employee will not . . . either directly or indirectly use or divulge, disclose or communicate the Confidential Information to any person, firm or corporation, whether within or outside of the Territory."

"Employee will not undertake any employment or activity competitive with the Business where his duties would require or involve his revealing or otherwise using the Confidential Information."

"For a period of one (1) year following the termination of Employee's employment for any reason, Employee shall not undertake any activity competitive with or similar to the Business . . . ."

Plaintiffs' petition alleged that defendants had violated these

and other terms of the employment contracts by working for Goldstone Investment Corporation and engaging in the same type of work or activity that they were engaged in while working for plaintiffs.

On August 12, 1985, the district court issued an ex parte restraining order temporarily enjoining defendants from directly or indirectly providing services to investors in connection with the purchase and sale of certificates of deposit and from using or communicating to third parties any of the confidential information, trade secrets, and confidential name lists defendants acquired while working for plaintiffs. Upon defendants' motion, the district court thereafter modified the T.R.O. to restrain defendants from, *inter alia*, using any lists, written material, or documents generated by the plaintiffs and from conducting or soliciting business from any customer with whom they did business while employed by the plaintiffs.

On August 22 and 23, 1985, the district court heard plaintiffs' motion for a temporary injunction. After receiving evidence regarding plaintiffs' motion, the district court determined that the anti-competition clause in the parties' employment agreement was overbroad and modified the covenant as follows:

"[D]efendants should be enjoined for one year from contacting customers with whom they have dealt while under the employment of the plaintiff. The injunction applies only to *individual* customers, not depositories, since depositories are matters of public record and cannot be considered confidential information."

The temporary injunction applied only to defendants Henry, Lucas, and Meens; the court expressly excluded defendant Gordinier from the provisions of its order. Defendant Accardi was made a party to the temporary injunction by the district court on September 25, 1985.

On October 11, 1985, plaintiffs filed a motion for an order to show cause why the defendants should not be held in contempt of court for violating the temporary injunction. The plaintiffs alleged that defendants had contacted customers with whom they had dealt while under the employment of the plaintiffs.

The district court heard plaintiffs' motion on October 22, 1985. During the hearing, defendant Lucas was dismissed from the case, and the court continued the matter until December 11, 1985.

The evidence was undisputed that the remaining defendants had contacted depositories who were customers of the plaintiffs at the time the defendants left plaintiffs' employ. However, there was no evidence that defendants had contacted "individual" investors. Again, the court's temporary injunction stated that "[t]he injunction applies only to individual customers." The defendants therefore contended that they had not violated the temporary injunction because they had not contacted any "individual" investors. The plaintiffs, on the other hand, read the injunction to restrain the defendants from contacting any former customer of plaintiffs, including depositories, and asserted that defendants had violated the injunction and should be held in contempt. In this regard, we note that plaintiffs had no "individual" customers, and defendants were aware of this fact.

The court concluded that its initial injunction was ambiguous and modified its language to restrain the defendants from "contacting any customer, depository, organization or individual, with whom they dealt while under the employment of the plaintiffs," for one year from December 20, 1985. The court also stated that because the original temporary injunction was ambiguous, the court could not find any willful violation of its orders, and concluded that the defendants were not in contempt of court. Both parties have appealed.

Defendants first contend that, because the Secretary of State forfeited plaintiffs' articles of incorporation on July 15, 1985, for failure to pay delinquent taxes, the district court lacked subject matter jurisdiction to issue the temporary injunction. We disagree.

K.S.A. 17-6801 *et seq.* governs the dissolution of corporations and the disposition of corporate assets upon dissolution. K.S.A. 17-6807 provides for the limited continuation of corporate existence following dissolution. That statute provides, in pertinent part:

"*All corporations, whether they expire by their own limitation or are otherwise dissolved,* including revocation or forfeiture of articles of incorporation, . . . *shall be continued,* nevertheless, for the term of three (3) years from such expiration or dissolution or for such longer period as the district court in its discretion shall direct, *bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal, or administrative, by or against them,*

*and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized."* (Emphasis added.)

During the three-year period following a corporation's dissolution, the corporation may not conduct the business for which it was originally incorporated. It may conduct only such business as is "incidental and necessary to . . . wind up." *Patterson v. Missouri Valley Steel, Inc.,* 229 Kan. 481, 489, 625 P.2d 483 (1981) (quoting with approval *Johnson v. Helicopter & Airplane Services Corp.,* 404 F. Supp. 726, 731 [D. Md. 1975]). Defendants contend that because plaintiffs' injunction action relates to the enforcement of covenants not to compete in defendants' employment contracts, plaintiffs' action to enforce these covenants was not business "incidental and necessary" to winding up the business. Defendants maintain the injunction action constituted a protection of plaintiffs' business, which could no longer continue under the provisions of the corporate survival statute, K.S.A. 17-6807. We are not persuaded.

At common law, the dissolution of a corporation was its civil death which terminated the corporation's capacity to sue and be sued. *Patterson,* 229 Kan. at 489 (quoting *Johnson,* 404 F. Supp. at 730). The corporate survival statute, K.S.A. 17-6807, prevents the abatement of a dissolved corporation's right of suit, and is therefore remedial in nature. As such, the survival statute should be liberally construed, so that its purpose may be accomplished. See, *e.g., Squires v. City of Salina,* 9 Kan. App. 2d 199, 202, 675 P.2d 926 (1984).

Our liberal construction of K.S.A. 17-6807 results in the following conclusions. A corporation's continued existence is limited when it is dissolved, *Patterson,* 229 Kan. at 489 (quoting *Johnson,* 404 F. Supp. at 731). During the three years following dissolution, a corporation may not conduct the business for which it was originally incorporated. K.S.A. 17-6807. However, the corporation does have the capacity, during the three-year period, to sue or be sued. K.S.A. 17-6807. Further, the corporation may gradually settle and close its business. According to the *Johnson* case, "[t]he power given to the corporation to dispose of its affairs during this period expressly includes the capacity to

sue and be sued." *Johnson,* 404 F. Supp. at 731. Further, our supreme court held in *Patterson* that "[a] Kansas corporation may sue or be sued during the three-year wind-up period immediately following its dissolution, whether voluntary or involuntary." *Patterson,* 229 Kan. at 490.

Nonetheless, defendants contend that the capacity of a forfeited corporation to sue is strictly limited to actions which are necessary to wind up the corporation's business affairs, and does not extend to actions to enforce anti-competitive clauses. We disagree.

The parties herein stipulated that the customer lists and the relationships developed between defendant employees and the investors and depositories were developed at the sole expense of the plaintiffs and were the sole and exclusive property of the plaintiffs. It is obvious these items possess value, and the defendants' alleged misuse of the corporation's properties could tend to devalue the corporation. It would not serve justice or the express wording of K.S.A. 17-6807 to require a corporation to sit idly by while its property is taken, without the ability to prevent the action. Certainly, a corporation has the right to preserve its property rights following dissolution, and K.S.A. 17-6807 serves this purpose. We conclude the trial court had jurisdiction to issue the injunction.

Defendants further contend the district court erred in ordering that its modified injunction run for one year from the date the modified order was entered, rather than for one year from the date the defendants terminated their employment with the plaintiffs, as bargained for by the parties in the employment contract. We agree that the trial court erred, as analyzed below.

At the outset, we believe that it is important to note that the parties herein expressly agreed in the employment contract that "[f]or a period of one (1) year following the termination of Employee's employment for any reason, Employee shall not undertake any activity competitive with or similar to the Business, whether as an officer, employee, agent, independent contractor, partner, shareholder, or principal of any corporation, partnership, proprietorship, firm, association, person, or other entity." The defendants terminated their employment with the plaintiffs sometime in late July or early August of 1985. Thus,

according to the express language of the parties' contracts, the proscription against competition would have ended one year from that time.

However, the trial court, after modifying the terms of its original injunction in its December 20, 1985, order, decided that the injunction should run one year from *that* date, thus lengthening the duration of the parties' covenant beyond that to which they had originally agreed by approximately five months. We conclude this was error.

First and foremost, while the trial court has the equitable power to enforce anti-competition clauses to the extent necessary to insure the protection contemplated by the parties, *cf.* *Foltz v. Struxness*, 168 Kan. 714, Syl. ¶ 3, 215 P.2d 133 (1950), we know of no authority allowing a trial court to extend the effect of such covenants, especially, as in this case, where the party restrained has been found to have been in compliance with the court's initial order.

Secondly, we are not persuaded by the fact that the trial court found its original injunction ambiguous, and that it could "start over" by issuing a new injunction with a one-year duration. The trial court admitted that it probably did not understand the case as well as it should have, and we presume that its lack of understanding caused the court to issue the ambiguous order. However, we do not believe the trial court's lack of understanding should result in the defendants being punished by extending the injunction imposed upon them. The trial court extended the duration of the injunction "to protect . . . the integrity of the Court." We believe that the court erred in doing this at the expense of the defendants herein.

The one-year period following the termination of the defendants' employment was a provision specifically bargained for by the parties. Further, considering the month-to-month rollover of certain accounts, the plaintiffs needed protection from the loss of those accounts immediately following the termination of defendants' employment. In an effort to protect the plaintiffs, the trial court extended the injunction for the five months during which the court's initial injunction was in effect. However, the harm that the anti-competition clause sought to prevent had already been suffered by the plaintiffs; the court's extension of

the injunction did nothing additional to protect the plaintiffs. The only true "protection" plaintiffs could obtain for the five months during which the court's initial ambiguous injunction was in effect would be in the form of an action for breach of contract, which, we understand from oral argument, is contemplated by the plaintiffs. However, the court's extension of an injunction because of the ambiguity created by its own order, we believe, was error. Consequently, we conclude that the trial court's injunction order must be reversed and the case remanded for proceedings consistent with this opinion.

The parties have raised several other issues concerning the trial court's December 20, 1985, order, relating to whether the trial court erred in finding the defendants not guilty of contempt of the initial injunction and to the court's failure to award attorney fees. It would serve only to lengthen this opinion to discuss these issues in depth, and we conclude that the trial court did not abuse its discretion in finding the defendants not guilty of contempt of the trial court's initial injunction. Further, because the trial court made no findings with respect to the defendants' request for attorney fees, and no objection to this omission appears in the record, the omission in the trial court's findings presents nothing for appellate review. *Green v. Geer*, 239 Kan. 305, 310-11, 720 P.2d 656 (1986).

Affirmed in part, reversed in part, and remanded.