

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **KANSAS CITY CHROME SHOP, INC.,** | |
| **Appellant,** | **WD84407** |
| **v.** | **OPINION FILED:** |
| **PATSY G. SMITH, PERSONAL REPRESENTATIVE,** | **MAY 3, 2022** |
| **Respondent.** | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Mark A. Styles, Jr., Judge**

**Before Division Three: Anthony Rex Gabbert, Presiding Judge,
Lisa White Hardwick, Judge, Thomas N. Chapman, Judge**

Kansas City Chrome Shop, Inc., ("KCCS") appeals the circuit court's Judgment dismissing its July 2, 2019, "Claim Against Estate" which sought from the estate of Charles Smith the sum of $141,412.59 for alleged unpaid loans made to Smith between 1989 and 2017. The circuit court's Judgment found that, because KCCS was forfeited as a corporation on or about July 15, 1991, KCCS had no statutory authority to make a claim against the estate. On appeal, KCCS contends that the circuit court erroneously applied Kansas law in ruling that KCCS had no standing to file its claim, arguing that a Kansas corporation continues to exist as a "living" entity after involuntary administrative forfeiture of its articles of incorporation. We affirm.

**Background and Procedural Information**

Charles D. Smith died intestate on April 9, 2018.  On December 21, 2018, his widow, Patsy G. Smith, was appointed the personal representative of his estate ("the Estate").  On July 2, 2019, KCCS filed a claim against the Estate pursuant to Section 473.360, RSMo 2016.  KCCS alleged that it was a "corporation and that there is due claimant from this estate the sum of $141,412.59 for loans issued to Charles Smith, prior to his death which remain unpaid."  The claim listed loans allegedly made to the deceased from 1989 through 2017.  The claim was filed by "Dora Clark-Wall, President."  On July 11, 2019, the circuit court designated the probate proceeding as adversary.

A bench trial was held November 26, 2019.  KCCS presented the testimony of Michael Clark ("Clark") and Dora Clark-Wall ("Wall").  Clark testified that, prior to the creation of KCCS, he knew the decedent through the decedent's management of the gas pump side of 18th Street Expressway Truck Stop.  In 1988, Clark, Wall, and the decedent formed KCCS.  Wall (Clark's mother) was president of the corporation, the decedent was vice-president, and Clark was secretary/treasurer.  KCCS's business was that of freight hauling.

Clark testified that the "business" of KCCS was first located at the 18th Street Expressway Truck Stop, but later moved to the decedent's residence.  Clark had no recollection of when this occurred, although indicated that the truck stop was closed down and sold in the early 90's.  Clark stated that all business was handled over the telephone, making it possible to be conducted from the decedent's residence and/or Wall's "location."

Clark testified that from 1989 to 2017, Wall made various loans to the decedent in her capacity as president of KCCS.  With each of these loans, Wall asked Clark to deliver the money.  Clark would obtain a comcheck with the money provided by Wall and deliver it to the decedent.

2

Although the comchecks included a carbon copy of the transaction, Clark did not save these because he personally knew who the money went to. Clark testified that one loan of $36,000 and one loan of $18,000 were paid out in cashier's check, not comchecks, from money withdrawn from Wall's personal bank account at Argentine Federal Savings and Loan. Clark had no copy of the cashier's checks or proof that the decedent ever received these checks. There was no evidence presented at trial of bank records showing monetary withdrawals associated with the purported loans involving comchecks or cashier's checks. The only physical record of these transactions presented at trial was a notebook wherein Clark and Wall testified that Wall kept a record of the loans she had made.

A loan of $57,289.08 was allegedly made for the decedent to purchase a semi-tractor-trailer truck for his use in hauling freight for KCCS. In that instance, a promissory note was signed with Baldwin City Bank on February 16, 1991, by the decedent and Wall, and the note matured on December 16, 1994. Clark testified that Wall used personal CDs as collateral for the loan, and that she paid the loan with those CDs when it matured. A promissory note signed by Wall and the decedent was offered into evidence. Clark went on to testify that the decedent asked for loans related to the business of KCCS, as well as personal loans.

Wall testified after Clark. She also testified that she had made personal and business loans to the decedent. Wall testified that her documentation for the loans to the decedent was contained in two "bank books" wherein she noted each time the decedent borrowed money. She no longer had one book, testifying that she gave it to the decedent because he wanted to take it home to show his wife. The other book was entered into evidence. In that book, Wall made a note on the last page regarding the total amount of loans she had extended to the decedent on behalf of KCCS. In it she wrote: "Don owes $243,140." Wall testified that she did not submit claims to the court

3

totaling that amount because she was missing her other book which supplied proof of other loans. Wall testified that at one point she itemized in her book all of the prior loans that she had made to the decedent, and the decedent signed the book indicating that he promised to repay the loans.[1]

Wall and Clark both testified at trial that they were unaware until the decedent's death that KCCS was forfeited as a corporation in 1991. They testified that it had been the decedent's responsibility to handle State filings with regard to the corporation, and that it was their intent to reinstate the corporation if possible.

After the Estate cross-examined Wall, the court discussed with counsel that uncontroverted evidence had been presented that KCCS was forfeited in 1991 and never reinstated. The court questioned whether a defunct entity could file a claim and, consequently, whether KCCS had standing in the matter.[2] The court asked the parties to submit briefs regarding that issue. The Estate indicated that it had evidence to present that would show that there was "no business done after the corporation was forfeited," but moved for "judgment based upon the evidence alone that they have not established standing for this claim." The Estate asked that it be allowed to present rebuttal evidence if the court determined that KCCS had met its burden with regard to standing. In the briefing submitted to the circuit court, along with several other arguments supporting its claim to standing, KCCS advised the court that its articles of incorporation were reinstated by the

---

[1] Wall and Clark were cross-examined on the fact, and agreed, that the signatures that KCCS claimed were promises by the decedent to repay prior loans were significantly different than signatures by the decedent that appeared in corporate documents and his Primerica insurance application.

[2] The question of a party's standing may be raised at any time, and a court may do so *sua sponte*. *Blackwood, Langworthy & Tyson, LLC v. Knipp*, 571 S.W.3d 108, 116 (Mo. App. 2019).

4

Kansas Secretary of State on January 28, 2020, and, as such, KCCS had standing pursuant to K.S.A. 17-7002[3] to maintain its claim against the Estate.[4]

On July 7, 2020, the circuit court issued its Judgment dismissing KCCS's claim against the Estate. The circuit court found that KCCS was forfeited as a corporation on or about July 15, 1991, and that K.S.A. 17-6807 sets forth a three-year requirement for a corporation to settle and close business affairs after dissolution. The circuit court concluded that, at the time KCCS filed its claim, it was dissolved as a corporation and filed the claim more than three years after the dissolution. Consequently, KCCS "exceeded its statutory authority" in filing the claim.

On August 7, 2020, KCCS moved to amend the Judgment arguing that the court misapplied Kansas law. On November 9, 2020, the circuit court denied KCCS's motion. This appeal follows.

**Standard of Review**

This court reviews the grant of a motion to dismiss *de novo*. *Coons v. Berry*, 304 S.W.3d 215, 217 (Mo. App. 2009). Interpretation of statutory provisions and their application to the facts of a case are legal issues reviewed *de novo*, as is the question of standing. *McKinney v. State Farm Mut. Ins.*, 123 S.W.3d 242, 245 (Mo. App. 2003); *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012). "If the court correctly dismissed the [claim], the ground upon which the dismissal was based is immaterial." *State ex rel. Div. of Child Support Enforcement v. Hill*, 53 S.W.3d 137, 143 (Mo. App. 2001) (internal quotation marks and citation omitted).

---

[3] All references to Kansas statutes are to the Kansas Statutes Annotated as updated through 2020, unless otherwise noted. All references to Missouri statutes are to the Revised Statutes of Missouri as updated through 2020, unless otherwise noted.

[4] In support of its position, KCCS filed three exhibits. Exhibit 1 appears to be the original Articles of Incorporation for KCCS; Exhibit 2 is a trial transcript excerpt of Clark's testimony wherein Clark indicated that the decedent continued to haul loads for KCCS up until 2017, and; Exhibit 3 is the reinstatement certificate issued to KCCS by the Kansas Secretary of State.

**Point on Appeal**

In its sole point on appeal, KCCS contends that the circuit court erred in ruling that KCCS did not have standing to file its claim against the Estate, arguing that this was an erroneous application of Kansas law because a Kansas corporation continues to exist as a "living" entity after involuntary administrative forfeiture of its articles of incorporation. KCCS argues that the circuit court failed to recognize the distinction between involuntary administrative forfeiture and voluntary dissolution. Further, that K.S.A. 17-7002(b) allows a corporation whose articles of incorporation have been forfeited to apply for reinstatement "at any time" unless the corporation's period of existence is limited by its own articles. KCCS contends that K.S.A. 17-7002(e) allows KCCS's claim against the Estate to stand, arguing that after reinstatement, "Kansas law clearly and broadly explains that it is as if the corporation's articles were never forfeited at all[.]" KCCS relies on this court's Opinion in *BH Holdings, LLC v. Bank of Blue Valley*, 340 S.W.3d 340, 343 (Mo. App. 2011), which KCCS argues distinguishes between a voluntary dissolution of a business entity and an involuntary administrative forfeiture of that entity's articles of organization. KCCS contends that the circuit court failed to recognize this distinction and erroneously applied K.S.A. 17-6807(a), which KCCS contends involves the "winding-up" period of a voluntarily dissolved corporation that no longer conducts corporation business. KCCS argues that because it never voluntarily dissolved and continued to conduct business for years beyond the forfeiture, K.S.A. 17-6807 is inapplicable and K.S.A. 17-7002 controls in this matter.[5]

---

[5] The Estate disputes that the corporation continued to conduct business after the forfeiture, and the Estate had no opportunity to present evidence on this issue. We will presume that the corporation continued to conduct business post-forfeiture solely to address KCCS's point on appeal, recognizing that this is a factual issue that was never addressed by the circuit court.

6

We first note that *BH Holdings* involved interpretation of Kansas statutes governing limited liability companies (LLCs), not Kansas corporations. *BH Holdings* in no way addresses K.S.A. 17-6807(a), which is expressly applicable to "All corporations, whether they expire by their own limitation or are otherwise dissolved, *including revocation or forfeiture of articles of incorporation pursuant to K.S.A. 17-6812 or 17-7510*[.]" (Emphases added). We find no statute comparable to K.S.A. 17-6807(a) (which provides that post-forfeiture suits are to be brought within three years) in the Kansas LLC statutes, and the LLC reinstatement statute is significantly different than the corporation statute with regard to what rights can be acquired during forfeiture in the name of the corporation. We do not dispute that there is a distinction between administrative forfeiture and voluntary dissolution of a corporation. However, this distinction is irrelevant where a statute expressly applies to both voluntarily dissolved corporations and involuntarily forfeited corporations.

K.S.A. 17-6807(a) states:

(a) All corporations, whether they expire by their own limitation or are otherwise dissolved, **including revocation or forfeiture of articles of incorporation pursuant to K.S.A. 17-6812 or 17-7510**, and amendments thereto, **shall be continued, nevertheless, for the term of three years from such expiration** or dissolution or for such longer period as the district court in its discretion shall direct, bodies corporate **for the purpose of prosecuting and defending suits**, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within three years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation. The corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the three-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the district court.

7

(Emphases added).  As KCCS was forfeited pursuant to K.S.A. 17-7510, this statute is expressly applicable to KCCS.

In *Patterson v. Missouri Valley Steel, Inc.*, 229 Kan. 481, 625 P.2d 483 (1981), the Kansas Supreme Court painstakingly reviewed K.S.A. 17-6807, which was modeled after a Delaware statute.  The Court noted that in 1973, the Kansas legislature *added* "including revocation or forfeiture of articles of incorporation" to the statute in response to court cases which had allowed litigation against administratively forfeited corporations beyond three years under the rationale "that a corporation dissolved involuntarily for failure to pay franchise taxes continues to exist as a legal entity since it may revive itself by paying its back taxes."  *Patterson*, 625 P.2d at 488-489. Giving effect to the amendment the Court concluded: "Absent a court-ordered extension or the appointment of a trustee or receiver, a Kansas corporation which has been dissolved, either voluntarily *or involuntarily*, may not sue or be sued after the three-year period has ended."  *Id.* at 491.  (Emphasis added).[6]

---

[6] In *Pottorf v. United States*, 773 F.Supp 1491, 1495 (D. Kan. 1991) aff'd 982 F.2d 529 (10th Cir. 1992), the IRS made a tax assessment against a corporation, and thereafter levied corporation property and a condemnation action was filed.  *Pottorf*, 773 F.Supp at 1492.  Two of the corporation's four stockholders challenged the action arguing that, despite the corporation still named as title holder to the property, after the forfeiture of the corporation, legal title passed to the stockholders following the three-year wind-up period of K.S.A. 6807.  *Id.* at 1493.  The court disagreed and analyzed the difference between forfeiture and dissolution, noting that corporate fees and taxes must first be paid in order to formalize dissolution.  *Id.* at 1493.  Further, that the ability to reinstate a forfeited corporation reveals that forfeiture is not tantamount to dissolution.  *Id.* at 1493-1494.  The court concluded that, because the forfeited corporation had not formally dissolved and conveyed title to the stockholders, title to the property remained with the corporation.  *Id.* at 1495.

KCCS relies on this case for support, but ignores that the court considered the issue it was addressing wholly distinct from whether a forfeited corporation could sue or be sued beyond three years post-forfeiture, expressly stating: "We have no doubt pursuant to K.S.A. 17-6807 and *Patterson* that Pottorf Farms could not sue or be sued after … the expiration of the three-year wind-up period".  *Id.* at 1495.

In a follow-up case, *United States v. Pottorf*, 1994 WL 804644, *3 (D. Kan. May 17, 1995) (unpublished), the court, relying on a statement from the previous *Pottorf* case, deemed *Patterson's* reference to "involuntarily forfeited" corporations as *dicta* because the facts of the *Patterson* case involved a voluntarily dissolved corporation. The 1994/1995 *Pottorf* court also deemed the 1991 *Pottorf* court's statement regarding K.S.A. 17-6807 to be *dicta*, concluding that "defendants have shown nothing to suggest that anyone has done anything to perfect the dissolution,

8

KCCS argues that K.S.A. 17-6807(a) is inapplicable to "involuntary administrative forfeiture" cases where a corporation continues to conduct business after forfeiture. In support, KCCS cites decisions which have held that K.S.A. 17-6807(a) cannot be invoked by a corporation to shield against a lawsuit when the corporation conducts business post-forfeiture and/or fails to formally dissolve. *See Hartford Fire Ins. Co. v. P&H Cattle Co., Inc.*, 2005 WL 3627053 (D. Kan. Dec. 29, 2005) (unpublished); *Mitchell v. Miller*, 8 P.3d 26, 30 (Kan. App. 2d 2000). Yet, these holdings essentially conclude that, where a corporation chooses to not avail itself of the protections of K.S.A. 17-6807(a) post-forfeiture and continues, without authority, to conduct business and/or fails to formally dissolve although forfeited, then the corporation exposes itself to suit and K.S.A. 17-6807(a) cannot be used as a shield to create the fiction that the corporation quit conducting business and dissolved. These cases are unlike the one before us in that, KCCS is not being sued but is instead prosecuting rights it allegedly acquired as a corporation during a thirty-year period in which it had no authority to conduct business but was, nevertheless, doing so. The extent to which a corporation continuing to conduct business post-forfeiture can invoke K.S.A. 17-6807(a) as a *shield* to protect from suit is an issue wholly distinct from whether a corporation's unauthorized post-forfeiture business conduct can be used as a *sword* to defeat K.S.A. 17-6807(a)'s three-year deadline for post-forfeiture suit.

KCCS argues that where a corporation never formally dissolves, continues to conduct business post-forfeiture, and in fact reinstates, K.S.A. 17-7002(b) and (e) prevails over K.S.A. 17-

---

voluntary or involuntary," and allowed a forfeited corporation to be joined as a defendant in a case commenced more than three years post-forfeiture. *Id.* at *3

9

6807(a) and allows KCCS's claims against the estate. KCCS argues that because it reinstated, we must treat the corporation in all respects as if it was never forfeited at all.

We are unable to find any cases applying K.S.A. 17-6807 and K.S.A. 17-7002 to the precise issue before us. Nevertheless, upon review of the statutes and relevant related cases, we first note that KCCS's general capacity as a corporation to file suit was restored, retroactive to the date of filing, when its articles of incorporation were reinstated. *Mission Road Assocs, L.P. v. IML Realty Co.*, 15 Kan. App. 2d 388, 391, 807 P.2d 1330, 1332 (1991).[7] However, reinstatement of the general capacity to sue does not automatically mean that KCCS has a claim against the Estate.

The effect of corporate reinstatement on the interim acts of corporations has provided challenging fodder for courts, as discussed by the American Law Reports (ALR) in "Reinstatement of Repealed, Forfeited, Expired, or Suspended Corporate Charter as Validating Interim Acts of Corporation." *See* Annot., 42 A.L.R.4th 392, 433.[8] The ALR discusses that not all reinstatement statutes are the same, and that States have taken varied approaches as to what rights are granted a corporation upon reinstatement. *Id.* In providing an overview of how this issue has been addressed in various jurisdictions, the ALR states:

---

[7] *See also A.R.D.C. Inc. v. State Farm Fire & Casualty Co.*, 619 S.W.2d 843 (Mo. App. 1981). In *A.R.D.C.*, a Missouri corporation filed suit after its charter had been forfeited for failure to file the annual registration and pay the required fee. *Id.* at 844. The cause of action accrued prior to forfeiture, and the suit was filed within the applicable statute of limitations. *Id.* at 844, 846. The corporation reinstated after the defendant moved to dismiss on the ground that A.R.D.C. did not have the capacity to sue. *Id.* at 844. The reinstatement occurred prior to the circuit court dismissing the action on the grounds that it had been filed when the corporation's articles were forfeited. *Id.* The matter was appealed to this court and we reversed under Missouri's reinstatement statute, finding that reinstatement retroactively legitimized the status of the corporation such that it was recognized as having had authority to file the action on the date it was filed. *Id.* at 846.

[8] This portion of the ALR was cited by *Mission Road Assoc, L.P.*, 807 P.2d at 1333, a Kansas Court of Appeals case, when determining that, upon reinstatement, K.S.A. 17-7002 retroactively legitimized a post-forfeiture court filing. Unlike here, in *Mission Road* both the court filing and reinstatement of the corporation occurred within three years of administrative forfeiture. *Mission Road*, 807 P.2d at 1332.

On this general proposition the results are conflicting both as between jurisdictions and as within single jurisdictions. The cases are not wholly reconcilable, but the different results are generally attributable to the differences in statutes as between jurisdictions and to statutory amendments or enactments within a single jurisdiction.

There are basically two types of statutes: (1) those that provide for reinstatement but are silent as to the effect of reinstatement on interim acts; and (2) those that provide for reinstatement and make some express provision as to the effect of reinstatement on interim acts.

…

As a general rule, statutes expressly validating interim corporation action retroactively validate acts taken on behalf of the corporation between the time of repeal, forfeiture, and suspension and the time of reinstatement or revival, but even such statutes do not validate such corporate action where other rights have intervened.[9]

*Id.* at § 2[a]. Moreover, the lengthy discussion in ALR regarding the effect that reinstatement has on various post-forfeiture/pre-reinstatement situations reveals that the ultimate determination turns on interpretation of the specific reinstatement statute.

K.S.A. 17-7002(b) provides:

(b) … [A]ny corporation whose articles of incorporation or authority to engage in business has become forfeited or void pursuant to this code [may] … at any time procure … reinstatement of its articles of incorporation … together with all the rights, franchises, privileges and immunities and subject to all of its duties, debts and liabilities which had been secured or imposed by its original articles of incorporation, and all amendments thereto … by complying with the requirements of this section.

---

[9] ALR discusses that a reinstatement statute which restored all corporate rights and assets except those sold or otherwise divested during the forfeiture prevented a corporation from taking under a decedent's will which left a residual legacy to the corporation "if in existence at the time of" the testatrix's death, but to an alternate beneficiary if the corporation was not in existence. *Id.* at § 10 (*citing Psychic Research and Development Institute, Inc. v. Gutbrodt*, 46 Md App 21, 415 A2d 611 (1980)). Although the corporation was reinstated six days after the testatrix's death, the court concluded that the corporation was not the rightful legatee because the intervening claim of the alternate beneficiary took precedence over the corporation's claim, and the subsequent revival of the corporation did not again vest property and rights in the corporation which were divested during the period of forfeiture. *Id.* (citing *Psychic Research*, 415 A.2d at 615).

11

We find that the language of K.S.A. 17-7002(b) merely establishes that any forfeited corporation may again legitimately conduct business in Kansas if reinstatement requirements of the section are met. It does not speak to the pre-reinstatement status of the corporation. K.S.A. 17-7002(e), however, does. It provides:

> (e) Upon the filing of the certificate in accordance with K.S.A. 17-7908 through 17-7910, and amendments thereto, the corporation shall be renewed or reinstated with the same force and effect as if its articles of incorporation or authority to engage in business had not been forfeited or void pursuant to this code or had not expired by limitation. Such reinstatement shall validate all contracts, acts, matters and things made, done and performed within the scope of its articles of incorporation or authority to engage in business by the corporation, its officers and agents during the time when its articles of incorporation or authority to engage in business was forfeited or void pursuant to this code, or after their expiration by limitation, with the same force and effect and to all intents and purposes as if the articles of incorporation had at all times remained in full force and effect. All real and personal property, **rights and credits, which belonged to the corporation *at the time its articles of incorporation or authority to engage in business became forfeited*** or void pursuant to this code, or expired by limitation **and which were not disposed of prior to the time of its renewal or reinstatement shall be vested in the corporation after its renewal or reinstatement**, as fully and amply as they were held by the corporation at and before the time its articles of incorporation or authority to engage in business became forfeited or void pursuant to this code, or expired by limitation, **and the corporation after its renewal or reinstatement shall be as exclusively liable for all contracts, acts, matters and things made, done or performed in its name and on its behalf by its officers and agents *prior to its reinstatement***, as if its articles of incorporation or authority to engage in business had at all times remained in full force and effect.

K.S.A. 17-7002(e) (Emphases added).

We note that, the plain language of K.S.A. 17-7002(e) provides that, while reinstatement legitimizes the prior unauthorized business activities of the corporation such that the corporation alone is liable for *all* corporate activities that occurred from the birth of the corporation through the forfeiture period and beyond, with regard to "rights and credits," only the rights and credits "which belonged to the corporation *at the time its articles of incorporation or authority to engage in business became forfeited … and which were not disposed of prior to the time of its renewal or*

12

*reinstatement* shall be vested in the corporation after its renewal or reinstatement[.]" *Id.* (Emphasis added). This provision is significantly different than Kansas's LLC reinstatement statute which provides that,

> all rights and interests, which belonged to the limited liability company at the time its articles of organization or authority to do business was canceled or forfeited … **or which were acquired by the limited liability company following the cancellation or forfeiture of its articles of organization** and which were not disposed of prior to the time of its reinstatement, shall be vested in the limited liability company after its reinstatement[.]

K.S.A. 17-76,146(c) (Emphasis added).

We presume that "the legislature intended that every word, clause, sentence, and provision of a statute have effect, and, relatedly, that the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Housing P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). We may not add language to an unambiguous statute, and "[n]either an instruction to employ 'strict construction' nor one to employ 'liberal construction' can authorize this Court to add or subtract words from a statute or ignore the plain meaning of the words that are there." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 n.5 (Mo. banc 2018). Consequently, we must interpret K.S.A. 17-7002(e) to mean that the "rights and credits" belonging to the corporation post-reinstatement are limited to *undisposed* "rights and credits" which belonged to the corporation at the time of forfeiture. This wording excludes rights acquired during the forfeiture. Further, pursuant to K.S.A. 17-6807, if reinstatement does not occur within three years post-forfeiture, then any pre-forfeiture right of suit that might have otherwise vested in the

13

corporation upon reinstatement no longer exists, as the three-year time limitation for bringing post-forfeiture suit disposed of that claim.[10]

Here, KCCS was forfeited July 15, 1991. The rights KCCS claims to have acquired in its corporate name while administratively forfeited between July 15, 1991 to January 28, 2020 (alleged loans itemized in KCCS's petition which span December 1994 to February 2017) did not vest in the corporation upon reinstatement because they did not belong to the corporation at the time of forfeiture. K.S.A. 17-7002(e). The only alleged loan itemized in KCCS's "Claim Against Estate" as having occurred prior to July 15, 1991, is a $500 loan dated March 29, 1989, described as "Personal loan issued to Charles Smith at his request to provide him funds." If the statute of limitations on this loan had not already expired by three years post-forfeiture,[11] the right of the corporation to pursue this particular loan was disposed on or about July 15, 1994, pursuant to K.S.A. 17-6807. Having been disposed prior to reinstatement, the right to pursue repayment of this loan could not have vested in the corporation upon reinstatement. K.S.A. 17-7002(e).

---

[10] This interplay between K.S.A. 17-6807 and K.S.A. 17-7002 is consistent with cases holding that corporations continuing to conduct business post-forfeiture are open to suit despite K.S.A. 17-6807. The statutory scheme evinces a legislative intent to limit the extent to which the shareholders of an administratively noncompliant corporation may be rewarded for noncompliance. K.S.A. 17-7002(e) provides that a reinstated corporation shall be "exclusively liable for all contracts, acts, matters and things made, done or performed in its name and on its behalf by its officers and agents prior to its reinstatement," such that the corporation and not the individual actors absorb liability, while expressly limiting the corporate rights which accrue/remain during the forfeiture period. Moreover, the statutory scheme reveals that failing to remain compliant with Kansas law and conducting business without authority is not without consequence.

[11] The statute of limitations in Kansas for breach of an oral contract is three years. K.S.A. 60-512(1). Any action upon a written contract must be brought within five years. K.S.A. 60-511. There was no testimony at trial regarding this alleged loan, and the only evidence presented at trial that has been supplied to this court is the transcript of the proceedings. We can only infer from the evidence that this was an oral contract originating in Kansas. All of KCCS's corporate business in 1989 was being conducted from the Kansas 18th Street Expressway Truck Stop location. Moreover, even if the loan was in writing, under Kansas law, KCCS's ability to pursue this loan was foreclosed on or about March 29, 1994, which was prior to three years post-forfeiture.

"A party has standing to sue when it has a justiciable interest in the subject matter of the action." *Salvation Army, Kansas v. Bank of America*, 435 S.W.3d 661, 666 (Mo. App. 2014) (internal quotation marks and citations omitted). In probate matters involving estates of decedents, standing has been described "as belonging to one who would either gain or lose" in the probate matter. *Id*. Despite K.S.A. 17-7002(e) retroactively legitimizing KCCS's status as a corporation such that KCCS's filing in the probate matter is deemed to have been filed while in good standing, because KCCS has nothing to gain from the decedent's estate and, therefore, no justiciable interest, KCCS lacked standing to pursue the specific claim it made against the Estate.

KCCS's point on appeal is denied.

### Conclusion

The circuit court did not err in dismissing KCCS's claim. None of the alleged unpaid loans of the decedent for which KCCS claimed a right to repayment in its Claim Against Estate vested in KCCS upon reinstatement of its articles of incorporation under K.S.A. 17-7002(e). KCCS, therefore, has no justiciable interest in the decedent's estate.

The circuit court's Judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

15