NOT DESIGNATED FOR PUBLICATION

No. 126,274

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HILL CITY HOUSING AUTHORITY,
*Appellee*,

v.

ERIC NEVINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Graham District Court; JESSIE A. THOMPSON, magistrate judge. Oral argument held March 5, 2024. Opinion filed July 19, 2024. Reversed.

*Casey Johnson*, of Kansas Legal Services, of Overland Park, *Matt Odom*, of the same firm, of Hays, and *Lowell C. Paul*, of the same firm, of Topeka, for appellant.

*Jill A. Elliott*, of Elliott Law Office, P.A., of Hill City, for appellee.

Before SCHROEDER, P.J., ISHERWOOD and PICKERING, JJ.

ISHERWOOD, J.: Eric Nevins appeals from the district court's judgment in favor of the Hill City Housing Authority, which evicted him from a public housing unit. The Housing Authority moved to evict Nevins after he targeted abusive language at a Housing Authority employee and balked about his obligation to provide financial information. The Housing Authority previously had problems with Nevins and contemplated evicting him but offered him a Compliance Agreement instead, which Nevins accepted. Language contained within that agreement eliminated terms in the lease

1

that required the Housing Authority to provide Nevins with a grievance procedure when faced with eviction.

Before this court, Nevins argues that the Compliance Agreement is invalid and unenforceable because it conflicts with federal regulations that require a grievance procedure and specific notice of the grounds for termination. We agree and find that the terms of the lease control. Under those terms, the notice of termination provided to Nevins is deficient for failing to state the specific grounds for termination and advise him of his right to contest the eviction. The decision of the district court is reversed.

FACTUAL AND PROCEDURAL BACKGROUND

Nevins initiated his tenancy with the federally subsidized Housing Authority in 2017. It offered a year-to-year lease with automatic renewal, subject to Nevins' income. Accordingly, Housing and Urban Development (HUD) rules required that Nevins update his financial information annually to ensure his rent obligation was properly calculated.

Three years later, the Housing Authority called a meeting with Nevins and his sister, Rhea Darnell, because Nevins was facing possible eviction. By the end of the meeting, however, the parties opted to enter into a Compliance Agreement, drafted by the Housing Authority, which enabled Nevins to renew his lease.

Under the terms of the Agreement, Darnell agreed to act as Nevins' guardian and Nevins agreed to abide by the original lease terms with particular emphasis on specific provisions, including that he would provide required documentation in a timely manner and treat staff members with respect. Additionally, he agreed that "if there is any violation of these terms, [the] lease will be terminated immediately, and he will have 30 days to move out." This provision also waived Nevins' right to contest termination of the lease through the lease's grievance policy.

2

Nevins' tenancy carried forward without further incident for approximately two years. In 2022, things went awry during Nevins' annual rent configuration meeting with Renee Jackson, the Executive Director of the Housing Authority. The conversation turned to current finances and Nevins became upset when she asked Nevins whether he owned any certificates of deposit (CDs). In his agitated state, he remarked that he did not have any, drawing a comment from Jackson that there was no need for him to be angry. Believing the meeting was over, Jackson moved toward the door and Nevins persisted with the CD issue. Jackson explained she was simply doing her job. Nevins demanded that she open the door which prompted a reply from Jackson concerning his seemingly grumpy mood. Nevins responded that Jackson seemed similarly cranky and slung a profane insult in her direction. Jackson advised that if he was so unhappy he could find another place to live. The advice merely served to elicit further off-color remarks from Nevins as he left the office.

Approximately two weeks later, Jackson notified Nevins, via hand-delivered letter, that the incident in her office constituted a violation of the terms of his Compliance Agreement, so his lease was terminated, and he had 30 days to vacate the premises. Nevins failed to vacate by the date specified in the notice, so the Housing Authority filed a petition to evict him. Their grounds for termination included Nevins' reluctance to provide financial information required for an assessment of his rent and the disrespect he exhibited toward a Housing Authority employee.

Nevins answered the petition, then moved to dismiss the same on the grounds that the Housing Authority's notice of termination failed to comply with the term expressly stated in the lease which required that any grounds for termination be stated with specificity to enable the tenant to prepare a defense. Nevins also attacked the enforceability of the Compliance Agreement with claims that it violated federal regulations and public policy by eliminating his ability to contest the lease's termination

3

through a grievance policy. Finally, he claimed that the Housing Authority failed to provide a 14/30-day notice of termination, as required by K.S.A. 58-2564(a).

The district court denied Nevins' motion to dismiss and conducted a bench trial. The Housing Authority called Jackson as its sole witness to provide an overview of the history between Nevins and the Housing Authority. Nevins testified on his own behalf and confirmed Jackson's account of the incident that gave rise to the termination notice.

At the close of evidence, the district court granted the Housing Authority's petition for eviction. It determined that the Compliance Agreement was enforceable because its terms and conditions were not prohibited by the Kansas Residential Landlord and Tenant Act (KRLTA) or any other rule of law. It found that Nevins' failure to treat Jackson with respect at the meeting violated the terms of the Agreement and provided sound justification for eviction. The district court informed Nevins that he could file a supersedeas bond to stay the eviction while he appealed, but Nevins did not do so and opted to vacate the premises instead.

Nevins now brings his case before this court to determine whether the Compliance Agreement is enforceable, whether the notice of termination met all necessary requirements, and whether the district court had jurisdiction over the case.

LEGAL ANALYSIS

*Nevins' appeal is not subject to dismissal for mootness or acquiescence.*

The first issue we must resolve is whether there is truly a justiciable issue before us to review. The Housing Authority contends that Nevins' appeal is moot because he voluntarily vacated the apartment and no longer holds any valid claim to occupancy.

4

*Jurisdiction and Standard of Review*

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). "The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance." 311 Kan. at 593. An issue will only be dismissed as moot if it is clearly and convincingly shown that the actual controversy has ended, and the only judgment that could be rendered would be ineffectual for any purpose, in that it would not impact the parties' rights in any manner. *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

According to the Housing Authority, Nevins' appeal is moot because the year-to-year lease expired in December 2022, and after the petition for eviction was granted, Nevins moved out of the apartment without filing a supersedeas bond. It asserts that these facts demonstrate the lack of a justiciable issue because Nevins no longer has an arguable claim to the property. See *Mueller v. Seiler*, 158 Kan. 440, 442, 148 P.2d 266 (1944); *Hesser v. Bale*, 114 Kan. 750, 220 P. 274 (1923).

But, in some measure, their position reflects a misunderstanding of the issues raised on appeal. It is Nevins' contention that his eviction was based on an invalid legal instrument because the Compliance Agreement relied on by the Housing Authority was unenforceable given that the provision prohibiting use of the grievance procedure violated federal law. Thus, according to the question of whether the Compliance Agreement is valid and enforceable remains a justiciable matter because it is the resolution of that question that truly governs whether Nevins has a right to possess the property. Or stated another way, resolution of that issue informs whether Nevins should have even been compelled to vacate the premises in the first instance.

The cases relied on by the Housing Authority to demonstrate that a tenant must have a right to possess the property to avoid mootness in an eviction proceeding are readily distinguishable from this case. *Mueller* analyzed an oral lease agreement, and the Kansas Supreme Court determined the case to be moot because the terms of the agreement fell within the Statute of Frauds. 158 Kan. at 443. And in contrast to this case, *Hesser* involved whether an oral farm lease was for one year or two, and the second year of the lease expired before the case was decided. 114 Kan. at 750.

A greater parallel can be drawn with *Kaw Valley Bank v. Collins*, No. 110,731, 2015 WL 5224700, at *7 (Kan. App. 2015) (unpublished opinion), where a panel from this court held that a borrower's appeal challenging his eviction was moot. The borrower's argument revolved around whether execution of a sheriff's deed is required prior to eviction, but all parties agreed that the sheriff's deed was signed and executed by the time of the eviction hearing. Thus, the appeal was moot because no question remained as to whether the borrower was lawfully evicted or had any right to possession of the property.

It is clear from the record that the district court concluded that the Compliance Agreement did not run afoul of Kansas law and Nevins violated that Agreement when he used disparaging language toward Jackson. Distinct from the undisputed, rather controlling fact present in *Collins*, the enforceability of the Compliance Agreement under federal housing law is a legal question that directly correlates to whether Nevins was lawfully evicted. That is, his eviction is attributable to the violation of an Agreement that is of questionable force and effect. Accordingly, we reject Hill City's assertion that no justiciable issue remains.

Additionally, it is well understood that "[o]rdinarily a party cannot appeal from a judgment unless it has a particular interest therein and *is aggrieved or prejudiced thereby*. Ordinarily its interest must be immediate and pecuniary. Appeals are . . . *only to correct errors injuriously affecting the appellant*. [Citations omitted.]" (Emphases added.) *Blank*

6

*v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984). We are satisfied that Nevins has satisfied his burden to demonstrate he has a substantial interest that would suffer impairment if we were to dismiss this appeal. As a low-income tenant relying on federally subsidized housing, the effects of an eviction in Nevins' file are significant as it may foreclose his ability to qualify for affordable housing in the future. Thus, he is certainly aggrieved by the district court's judgment, even beyond the immediacy of vacating the current residence.

Lastly, there are recognized, though quite narrow, exceptions to the mootness doctrine which include legal claims that are capable of repetition. See *State v. Montgomery*, 295 Kan. 837, 841, 286 P.3d 866 (2012); *State v. DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120 (2007). Compliance Agreements, like the one at issue here, carry the potential to create a power imbalance by preying on the low-income tenant and inducing their agreement to terms and conditions which are potentially adverse to their interests, but which they nevertheless agree to accept out of concern that to do otherwise would compromise their access to income assisted housing. There is no indication that the Housing Authority's use of a Compliance Agreement is unique to Nevins' case and, as such, the complications arising from the use of such agreements are certainly capable of repetition. Thus, we find that the better practice is to undertake an analysis of the merits surrounding the claim before us.

As a final matter, the Housing Authority also intimates that Nevins acquiesced to the judgment by voluntarily moving out without filing a supersedeas bond. But this argument was not fully fleshed out so we decline to delve into the details of the issue. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (a point raised incidentally in a brief and not argued therein is deemed waived or abandoned).

*The Compliance Agreement is not enforceable.*

In his first claim of error, Nevins contends that the Compliance Agreement he entered into with the Housing Authority is invalid and unenforceable.

*Standard of Review*

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

Similarly, statutory interpretation presents a question of law over which appellate courts have unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2002); *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021).

Public housing is controlled at the federal level by the United States Housing Act of 1937 (codified as amended at 42 U.S.C. § 1437 et seq.), and its accompanying regulations. See *Samuels v. District of Columbia*, 770 F.2d 184, 188 (D.C. Cir. 1985). Under the Act, local public housing authorities (PHAs) receive federal funding to administer the public housing projects and, in return, the PHAs are subject to extensive federal regulation.

> "In particular, PHAs are required to operate public housing in compliance with provisions of the Act strictly regulating rent calculation, *see* 42 U.S.C. § 1437a, lease provisions, *see id.* § 1437d(l)(1), eviction procedures, *see id.* § 1437d(l)(3), tenant selection, *see id.* §§ 1437d(c)(4)(A), (c)(3)(i) and administrative grievance procedures, *see id.* § 1437d(k). *See also id.* § 1437d(c)(4) (providing that annual federal funding contracts shall require PHAs

8

to comply with further HUD regulations concerning the operation of public housing projects)." *Samuels*, 770 F.2d at 188.

In language that mirrors paragraph 17 of Nevins' lease, federal regulations impose specific requirements on a PHA's notice of lease termination.

"The notice of lease termination to the tenant shall state specific grounds for termination, and shall inform the tenant of the tenant's right to make such reply as the tenant may wish. The notice shall also inform the tenant of the right (pursuant to § 966.4[m]) to examine PHA documents directly relevant to the termination or eviction. When the PHA is required to afford the tenant the opportunity for a grievance hearing, the notice shall also inform the tenant of the tenant's right to request a hearing in accordance with the PHA's grievance procedure." 24 C.F.R. § 966.4(l)(3)(ii) (2022).

The federal regulations also mandate that a grievance procedure be made available to tenants and that the same "*shall* be included in, or incorporated by reference in, *all* tenant dwelling leases." (Emphases added.) 24 C.F.R. § 966.52(b) (2022). The purpose of such procedures is "to assure that a PHA tenant is afforded an opportunity for a hearing if the tenant disputes within a reasonable time any PHA action . . . which adversely affect[s] the individual tenant's rights, duties, welfare or status." 24 C.F.R. § 966.50 (2022). The "grievance procedure *shall* be applicable . . . to all individual grievances." (Emphasis added.) 24 C.F.R. § 966.51(a)(1) (2022). The regulations contain very few exceptions to this requirement, none of which are applicable here. See 24 C.F.R. § 966.51(a)(2)(i)(A)-(C) (PHA can exclude grievances related to certain criminal activity); 24 C.F.R. § 966.51(b) (grievance procedures not applicable to class grievances or disputes between tenants not involving the PHA).

The caselaw in Kansas which discusses individual written waivers of federally imposed lease requirements is scant. However, courts in other jurisdictions have found that before a PHA can properly initiate eviction proceedings, the subject tenant must receive written notice that a grievance procedure is available to them to contest the

rationale underlying the eviction notice. *In re Adams*, 94 B.R. 838, 845-46 (Bankr. E.D. Pa. 1989); see also *Noble v. Bethlehem Housing Authority*, 617 F. Supp. 248, 251-52 (E.D. Pa. 1985); *Staten v. Housing Auth. of City of Pittsburgh*, 469 F. Supp. 1013, 1015-16 (W.D. Pa. 1979). Equally important, the tenant must be afforded a fair opportunity to invoke the grievance procedure should they desire to do so. *In re Adams*, 94 B.R. at 845-46; see also *Noble*, 617 F. Supp. at 251-52.

In light of the above referenced authorities, we find that the Compliance Agreement at issue in this case is unenforceable given that it endeavored to modify the original lease in a way that conflicts with federal public housing regulations. When an agreement is prohibited by statutes, ordinances, or regulations, it carries no force or effect. See Restatement (Second) of Contracts § 178 (1981).

*The Housing Authority failed to provide Nevins with sufficient notice concerning the termination of his lease.*

Nevins next asserts that the notice he received from the Housing Authority concerning the termination of his lease failed to comply with the terms of his original lease and ran contrary to federal regulations, as well as state law.

To recap, the language at issue in the notice of termination reads, "Due to the incident that occurred Friday September 30th 2022, this is your 30 day notice to vacate the premises." Meanwhile, the terms of Nevins' original lease state, "Any termination of this lease shall be carried out in accordance with U.S. Department of Housing and Urban Development regulations, State and local law, and the terms of this lease."

*Standard of Review*

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or

10

rulings. *Trear*, 308 Kan. at 936. "[P]arties are presumed to contract with reference to presently existing statutes, ordinances, and regulations, the provisions of which will be read into and become part of the contract by implication as though expressly inserted therein . . . ." *Steele v. Latimer*, 214 Kan. 329, Syl. ¶ 7, 521 P.2d 304 (1974).

*The notice was not sufficient under the terms of Nevins' original lease.*

The original public housing lease Nevins entered into contains several requirements with respect to the written notice that must precede the termination of a lease agreement. Specifically, it must (1) be delivered within a certain timeframe, depending on the reason for termination, (2) specify the date of termination, (3) state the grounds for termination with enough specificity for the resident to prepare a defense, and (4) advise the resident of the right to reply, examine relevant documents, contest the termination through the grievance policy, and defend the action in court. The notice that Nevins received from the Housing Authority failed to fulfill these requirements.

First, the notice lacked the requisite degree of specificity to enable Nevins to challenge the termination. To the contrary, it merely referenced "the incident that occurred Friday September 30th 2022" as the grounds for termination. That phrase falls short of the mark because the events of that day included both a frustrated exchange concerning the financial disclosure requirements and the abusive language that Nevins directed at Jackson. The district court even commented at the hearing that "without going into any detail about what the event was, I don't know if it was something very insignificant or a major event." The district court's comment demonstrates how, from an objective standpoint, the notice fails to precisely identify the grounds for termination.

That broad language had the effect of enabling the Housing Authority to rely on both reasons at the hearing. Thus, the issued notice circumvented two of the measures contained within the lease that were designed to protect Nevins' rights. On the one hand

11

Nevins' defense was left uninformed, and on the other, no meaningful limits were placed on the Housing Authority's arguments at the hearing. Not only is the lack of specific grounds for termination a surface-level problem, but it also had the effect of creating an imbalance of power at the hearing where both parties should have been on equal footing.

Next, the notice neglected to properly advise Nevins of his rights under the lease. That is, it fails to provide him with any information which explains how he may reply to the notice or examine any documents from the Housing Authority which are relevant to the termination, contest the termination through the grievance policy, or defend the action in court. Not only does this omission violate the express terms of the lease, but it also contributes to the aforementioned power imbalance.

*The notice of termination did not meet state law standards.*

In addition to its deficiencies under the terms of the lease, the notice also failed to comply with the 14/30-day notice rule contained within the Kansas Residential Landlord and Tenant Act (KRLTA).

> "[T]he landlord may deliver a written notice to the tenant *specifying the acts and omissions constituting the breach* and that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice, if the breach is not remedied in 14 days. The rental agreement shall terminate as provided in the notice regardless of the periodic rent-paying date, except that if the breach is remediable by repairs or the payment of damages or otherwise, and the tenant adequately initiates a good faith effort to remedy the breach prior to the date specified in the notice, the rental agreement will not terminate." (Emphasis added.) K.S.A. 58-2564(a).

In *Clark v. Walker*, 225 Kan. 359, 363, 590 P.2d 1043 (1979), the Kansas Supreme Court discussed the origins and general provisions of the KRLTA, and examined its legislative history as set out in a Report of the Special Committee on Consumer Protection to the 1974 Legislature. That report was dedicated to "'the need for

additional legislation governing landlord-tenant relations'" and made the following conclusions and recommendations:

> "Upon analysis of the information before the Committee, it became apparent that the antiquated common law concepts and absence of statutory law creates problems and works to the detriment of both landlords and tenants who may very well be operating on different premises. It is the opinion of the Committee that there is a need to statutorily state the various obligations and other elements of tenancy so as to adequately express the modern day concepts of landlord-tenant relations. It should not be made the responsibility of the courts to develop these concepts. Therefore, the Committee recommends that the 1974 legislature enact a comprehensive landlord-tenant code which would establish a single standard of reference for both landlords and tenants." 225 Kan. at 363.

Legislation emerged that was based, in part, on the Uniform Residential Landlord and Tenant Act. Among other things, the Act prohibits the enforcement of unconscionable provisions, K.S.A. 58-2544, supplies default terms in the absence of an agreement, K.S.A. 58-2545, and prohibits certain per se unreasonable terms, K.S.A. 58-2547. As the *Clark* court observed, "it is quite evident from the provisions of the law itself and the legislative history that the legislature considered the concerns and recommendations of both landlords and tenants in drafting a law which attempts to strike a reasonable balance between the positions advocated by the two groups." 225 Kan. at 364. And, ultimately, "it is for the legislature, not the courts, to balance the parties' advantages and disadvantages." 225 Kan. at 366.

Returning to the Housing Authority's violation of the 14/30-day notice rule, we derived guidance from *Fenn v. Windsor at Kingsborough, Inc.*, 226 Kan. 653, 603 P.2d 188 (1979). The lease agreement at issue in that case contained a termination clause which included the 14/30-day notice language, as well as a provision stating that the notice must specify the acts and omissions constituting the breach. But when the notice of termination was issued, even though the conduct giving rise to termination was

13

remediable, the notice failed to include language informing the resident of the 14-day window they had to cure the breach and simply stated they had 30 days to vacate the premises. 226 Kan. at 653-55.

The *Fenn* court concluded that the notice was defective under the KRLTA because it instructed the tenant to vacate in 30 days, with no alternative. 226 Kan. at 656. Due to this omission, the notice did not satisfy K.S.A. 58-2564(a), because a written notice of lease termination must include (1) the specific omission constituting the breach, (2) the 30-day timeframe for termination of the lease, and (3) the right to remedy the breach within 14 days. The *Fenn* court went on to state:

> "'A written notice should be clear, definite, and explicit and not ambiguous. A notice which is ambiguous, misleading, and unintelligible to the average person who is to be affected by it is insufficient. Where a statute requires that one party give the other notice in order to establish rights and obligations, the notice must state the facts required by law; and in determining what facts must be stated the legislative intent must be ascertained from all the terms of the statute, related statutes, common sense, and sound reasoning.'" 226 Kan. at 656 (citing 58 Am. Jur. 2d, Notice § 23).

The notice Nevins received suffered from the same infirmities as that deemed deficient in *Fenn*. Neither stated the specific grounds for termination nor informed the tenant of their right to remedy the breach within 14 days. Rather, both merely advised the tenant of their 30-day window to vacate. Such notices run contrary to the obligations set forth under the KRLTA.

*The notice was insufficient under federal law and regulations.*

We previously noted that because PHAs are the beneficiaries of federal funding for the administration of public housing, they are governed by an extensive set of federal regulations. The Housing Authority is well aware of the regulations given that Nevins'

14

original lease with them is replete with language which mirrors that contained within the federal regulations.

*Raleigh Housing Authority v. Winston*, 376 N.C. 790, 855 S.E.2d 209 (2021), nicely complements the regulations for the purposes of our analysis. The question on appeal was whether a reference to a provision in a lease alone satisfies the specificity requirements mandated by federal law. At issue was construction of the phrase "specific grounds" in 24 C.F.R. § 966.4(l)(3)(ii). Engaging in statutory construction, the court concluded that the plain meaning of "specific grounds" requires PHAs "to clearly identify the factors forming the basis for termination of the lease." 376 N.C. at 796.

The notice in *Raleigh* merely stated that multiple complaints of the tenant's inappropriate behavior provided cause for her termination. It then cited the tenant's obligation under the lease to conduct herself, and ensure her guests conducted themselves, "in a manner which will not disturb the neighbors' peaceful enjoyment of their accommodations." 376 N.C. at 796. The reviewing court observed that such notice "lacks any reference to specific conduct" and as written, "encompasses a broad range of conduct [that] may involve the tenant or other persons on the premises, and . . . may include conduct for which the landlord may not evict the tenant as a matter of law." 376 N.C. at 796. Accordingly, the notice of termination was "fatally deficient." 376 N.C. at 797. See also *Harris v. Paris Housing Authority*, 632 S.W.3d 167, 172-74 (Tex. App. 2021) (finding that eviction notice failed to meet HUD specificity requirements).

Another notable federal regulation here is 24 C.F.R. § 966.51(a)(2)(i), which states that "[t]he term due process determination means a determination by HUD that [the] law of the jurisdiction requires that the tenant must be given the opportunity for a hearing in court which provides the basic elements of due process (as defined in § 966.53[c]) before eviction from the dwelling unit." The referenced regulation, 24 C.F.R. § 966.53(c) (2022), describes the procedural safeguards required for due process as (1) adequate

notice to the tenant of the grounds for terminating the tenancy and for eviction, (2) the right of the tenant to be represented by counsel, (3) the opportunity for the tenant to refute the evidence, and (4) a decision on the merits. Once again, notice of the grounds for eviction is a stated requirement.

The Housing Authority fell short in its duty to provide Nevins with notice that was sufficient to satisfy federal requirements prior to terminating his lease. What he received was impermissibly vague and failed to properly advise him of the rights he had while navigating the termination procedure. That failure compromised the basic right to due process that Nevins was entitled to before being evicted from his apartment.

*The district court had jurisdiction over this eviction action.*

The final argument raised in Nevins' brief is that the district court lacked jurisdiction to hear this case because the Housing Authority must comply with federal regulations as a condition precedent to the filing of an eviction action. While Nevins did not raise this argument below, subject matter jurisdiction may be raised at any time, even for the first time on appeal. *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021).

*Standard of Review*

Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

Nevins relies solely on *Bell v. Dennis*, 158 Kan. 35, 144 P.2d 938 (1944), to undergird his jurisdiction challenge. In that case, a landlord brought an action for forcible detainer against a tenant, alleging failure to pay rent and failure to vacate within the timeframe provided by the notice of termination. The district court found in favor of the landlord, and the tenant appealed. 158 Kan. at 36.

On appeal, the Kansas Supreme Court reversed the district court's judgment after finding that the plaintiff in a forcible detainer action must strictly follow the procedures of the statute granting jurisdiction to the district court. The court also observed that certain "conditions precedent" must be met before a forcible detainer action may proceed. 158 Kan. at 42. For instance, plaintiffs must affirmatively show service of a three-day notice to leave the premises and perfect their right of possession at the time the notice is given. The court also noted that federal regulations pertaining to termination of tenancies are conditions precedent and must be affirmatively pleaded as necessary elements of a cause of action in forcible detainer. In that case, a federal regulation required a 10-day notice for termination of the tenant's lease, but the landlord neither alleged nor proved compliance with that requirement, so the court reversed. 158 Kan. at 41-42.

A few key issues distinguish *Bell* from the present case. First, actions for forcible detainer and those for eviction are not one and the same. Eviction is a broad term which refers to "[t]he act or process of legally dispossessing a person of land or rental property." Black's Law Dictionary 697 (11th ed. 2019). By contrast, forcible detainer more specifically refers to actions "against persons alleged to have made unlawful and forcible entry into lands or tenements of the plaintiff and have detained the same, as well as actions against persons alleged to have made lawful and peaceable entry into lands or tenements and have unlawfully and by force detained the same." K.S.A. 61-2301 (Furse 1994). Because Nevins lawfully and peacefully entered onto the premises as a tenant and never used force to remain on the premises, this case is properly characterized as an eviction matter.

The two actions are also governed by different statutory provisions. For instance, in the Kansas statutes governing civil procedure for limited actions, K.S.A. 61-101 et seq., the two actions are discussed in separate articles. Eviction actions are addressed under Article 38, while Articles 13 and 23, which discussed forcible detainer, were

repealed in 1969 and 2000, respectively. The separate treatment of these actions by the statutes governing civil procedure suggests that the two actions are subject to different jurisdictional requirements.

Nevins' jurisdiction argument relies solely on a case that discusses a cause of action and a federal regulation long since repealed. There is nothing to suggest that *Bell* is binding precedent which directs that the district court lacked jurisdiction here.

The invalid Compliance Agreement coupled with the deficient notice of termination mandate reversal of the district court's decision. That gives rise to the question of what suitable remedy is available. Nevins did not file a supersedeas bond as required under K.S.A. 61-3905 to stay the proceedings pending the outcome of his appeal. As a result, he vacated the premises. However, our ruling today should prompt the removal of the eviction from Nevins' record, thereby easing his burden in the event he applies for public housing in the future.

Reversed.